Vestal **LANGDON**, Deceased, by Marie Langdon, Administratrix, and Marie Langdon, Individually, Plaintiff-Respondent,

v.

Jeremiah **KOCH**, Defendant-Appellant.

No. 8383.

Springfield Court of Appeals.

Missouri.

July 17, 1965.

Orville C. Winchell, Lebanon, for defendant-appellant.

James K. Prewitt, Miller, Fairman, Sanford, Carr & Lowther, Springfield, for plaintiff-respondent.

RUARK, Presiding Justice.

This is a court-tried suit for damages to an automobile originally instituted by Vestal Langdon, who designated himself owner, but thereafter maintained by Marie Langdon as administratrix of Vestal Langdon's estate and in her own right as an individual.

The occurrence: A "left turn" collision. The front of plaintiff's car struck defendant's car on the left side at the extreme rear. Both cars had been headed west on Highway M.

The scene: Defendant's home and driveway are on the south side of Highway M, and about one hundred fifty feet west of the intersection of Highway M with County Road CC. Highway M is blacktop, about twenty-two feet wide. It slopes downhill to the west from a "rise" which is probably two hundred fifty feet back east of the intersection with CC. At the entrance to defendant's driveway are two concrete posts set so as to allow a clearance of approximately a foot on each side of an entering car. This necessitates a rather sharp turn.

The incident occurred at 5:15 P.M., May 13, 1963. It was a misty or drizzly day. The road was wet and there was enough falling moisture to require the operation of windshield wipers. Gary Langdon (age sixteen or seventeen) had borrowed his parents' car and was driving west on Highway M. According to his story, he first noticed the defendant's car ahead of him when he was about half-a-quarter east of the CC intersection. He was then about two hundred feet behind defendant and traveling about thirty-five miles per hour with his parking lights on. When defendant was "about to cross" the CC intersection he was about one hundred fifty feet behind defendant's car. When he was fifty to seventy-five feet west of the intersection he pulled out to the left and speeded up to about forty miles per hour preparing to pass. He estimated that defendant's car was then traveling fifteen to twenty miles per hour. He testified that when he got within about ten feet of the rear of defendant's car, it made a sharp turn over onto and across the left side of the road, completely blocking that side. He (Gary) immediately attempted to swerve back to the right but was unable to avoid the collision, which took place at about the center of the road. The left front of plaintiff's car struck the left side of defendant's car at the extreme rear. Gary says he did not see any left-turn signal either by signal light or by arm.

Defendant testified that as he approached to within a couple car lengths of the CC intersection he looked to the rear and saw no other vehicle. "It was raining at that time, and the rain on the mirror, and I could see up to where the road goes over the rise * * *." Thereafter, he crossed

CC at probably twenty miles per hour, turned on his left-turn signal, observed the green light blinking, and gradually slowed down so that his speed was ten to twelve miles per hour at the point where he attempted to turn into his driveway. He did not look again to his rear *until he commenced turning his wheels to the left* and started at a sharp angle across to his driveway on the south side of the road. As he thus turned left, he looked to the rear and saw plaintiff's car "twenty–twenty-two feet" behind him, and it was too late to avoid the collision.

The findings of the court were:

"The Court finds from the evidence that Plaintiff's automobile was damaged as a result of the accident in the sum of $719.74. As Plaintiff had lent her car to her son, and as no agency-principle or joint venture-principle was involved, the defense of contributory negligence is not available to the Defendant.

"The Court finds from all the facts and circumstances in evidence that the act of Defendant, in making a left turn into his driveway, without having first ascertained that there were no vehicles behind him was negligence and that such negligence was the proximate cause of the collision in question. The Court finds that a driver of a motor vehicle intending to make a left turn has the duty to determine that such turn can be made without danger to normal overtaking traffic, and that the Defendant did not do so under the facts in this case."

Defendant has appealed.

The conduct of Gary, driver of plaintiff's car, was not such as to endear him to a seeker of justice. He was driving at least thirty-five miles per hour in the mist or rain in a zone with a posted speed limit of twenty-five miles per hour. He admittedly gave no signal or warning of intention to pass. But appellant concedes that his possession of the automobile was a bailment and no question of agency or incompetency is involved. Therefore, contributory negligence is not involved. Appellant nevertheless contends that plaintiff did not show that defendant's acts were the proximate cause of the collision and consequent damage. The burden of his argument is that "the evidence clearly established" that the defendant made sufficient observation to the rear before making his turn.

It is true, as appellant states, that one is not required to keep a constant lookout in all directions at the same time. This we have said many times. But the law imposes upon the motorist who intends to make a left turn across a highway the duty to use the highest degree of care to ascertain that such movement can be made with reasonable safety. That duty of necessity requires appropriate observation to the rear in order to see whether there are following or overtaking vehicles in the vicinity, and in such position, and traveling at such speed, as to make such turn unsafe under the circumstances as they reasonably appear. "Appropriate observation" necessarily implies a look or observation at a time and place which comports with the contemplated act and which will be reasonably efficacious in informing of the probability of danger. Nor is the driver excused from fulfilling that duty because the drivers of other vehicles may be negligent. In this situation, one may not take for granted that there won't be other drivers violating the rules of the road. These things were discussed, with appropriate citations, in our recent case of Reed v. Shelly, Mo.App., 378 S.W.2d 291. We see no need to reiterate and re-cite.

■ The defendant's last look to the rear was, by his own admissions, too late. It was, therefore, the same as *no* look. Defendant says his other (first) look to the rear was when his car was a car-length or

two east of the intersection with CC. He says he saw nothing on this misty or rainy day. The trier of the fact may or may not have believed that defendant took this first look; but, if he did so, obviously it was an "ineffectual" look. One look was an inch in front of the snout and the other an inch behind the tail of the carcass. Neither of these reached the meat of the actual necessities in this case; for there *was* a car behind him, and that car *did* strike him as he made his turn. So if defendant took the "looks," one was too early, too far back, or too casual, and one was too late. Neither of them discharged his duty to make appropriate observation to the rear before making his left turn sharply across the road. We rule against appellant on this point.

We also have the question of proof of damage to plaintiff's automobile.

Plaintiff's witness Alexander is parts manager for the Chevrolet garage. He identified an exhibit designated as "the repair bill," which contained a long list of items for labor, parts, and accessories supplied in repair of plaintiff's 1960 Chevrolet, with separate charges opposite each item, totaling (with tax) $728.74. He testified that the entries on this exhibit were made by him in his own writing and as a part of his job in the regular course of business. The entries were made as the parts were "issued out to the job." After the repair job was completed, this final repair bill went on "to the girls in the office." The witness did not himself inspect the car and he did not know whether the repairs were needed as a result of the accident in question. He did testify that the charges made on the exhibit were reasonable. The appellant contends that the exhibit was not admissible because it did not conform to the requirements of the Uniform Business Records as Evidence Act and was hearsay, but his real argument is that it was not the best evidence and that it did not prove whether these repairs were a restoration to original condition or a betterment.

■ We think Alexander was a "qualified witness" under Section 490.680, RSMo 1949, V.A.M.S. He made the record himself in the regular course of business and the entries were made at the time items of "repair" were made. The trial court has considerable discretion in determining whether a satisfactory foundation has been laid for the admission of business records. State v. Weindorf, Mo., 361 S.W.2d 806; Hancock v. Crouch, Mo.App., 267 S.W.2d 36. And it must be borne in mind that the purpose of the Uniform Business Records as Evidence Act is to avoid many of the (previous) overly-technical rules in regard to the admissibility of such records. Adler v. Ewing, Mo.App., 347 S.W.2d 396, 401, and cases cited. We think that the exhibit and the testimony of witness Alexander sufficiently established that certain repairs and replacements were made and that the cost thereof was reasonable, and that such evidence was admissible as tending to support plaintiff's claim of damage; *but it was not, in itself, sufficient to show or prove that plaintiff suffered such amount of damage on account of this accident.*

■ Plaintiff's petition declared that the difference in the market value immediately before and immediately after the accident was $719.74. It is the general rule in Missouri that where an automobile or other property having a readily ascertainable market value suffers substantial injury, the proper measure of damage is the difference in the reasonable market value of the article immediately before and immediately after the injury. Hood v. M. F. A. Mutual Insurance Co., Mo.App., 379 S.W.2d 806, and cases cited at Footnote 7, p. 812; Barnes v. Elliott, Mo.App., 251 S.W. 488 (4); see also West's Missouri Digest, Damages, ■

There may be other items of loss, such as cost of preservation and diminution of damage and loss of use, which would be added to the total damage suffered by the owner (see Gilwee v. Pabst Brewing Co., 195 Mo.App. 487, 193 S.W. 886), but there was no such contention in this case. There may be repairs which effect a complete restoration to former value (Southwestern Bell Telephone Co. v. Rawlings Mfg. Co., Mo.App., 359 S.W.2d 393), and there may, of course, be repairs or supplements which substantially increase the market value (see Conner v. Aalco Moving and Storage Co., Mo.App., 218 S.W.2d 830; General Exchange Insurance Corporation v. Young, Mo.App., 206 S.W.2d 683 [10, 11], aff'd 357 Mo. 1099, 212 S.W.2d 396). The cost of repairs or restoration is competent evidence (Johnstone v. Home Ins. Co. of New York, Mo.App., 34 S.W.2d 1029 [6]; Brown v. Pennsylvania Fire Insurance Co., Philadelphia, Mo.App., 263 S.W.2d 893, 899); and, where there are additional facts (in reference to the condition of the car, for instance) to support such, the difference in market value before and after value may be found or inferred. Duffendack v. St. Louis Public Service Co., Mo.App., 365 S.W.2d 52; Oberhaus v. Eichwald, Mo., 303 S.W.2d 29; Blanke v. United Rys. Co., Mo.App., 213 S.W. 174; Helton v. City of St. Joseph, Mo.App., 340 S.W.2d 198.

In this case there was no evidence as to the market value of the automobile, either before or after the injury. Respondent contends that the deficiency was supplied by plaintiff who testified (without objection) that the car was titled in both Vestal (her deceased husband) and herself, and that she believed the amount of the repair bill was $728.74 as shown by the exhibit. "Q. And, in your opinion, was the damage to that vehicle in that amount? A. Yes." On cross-examination she testified that her husband attended to it (presumably seeing to the repairs of the car). There is no evidence, or indication from the evidence, that she was familiar with the repairs that were made, or that she knew anything about the condition of the car either before or after the accident, or that she had ever seen the car between the time of the wreck and the repairs. We do not know whether she had ever driven it either before or after. The *only* thing which she appeared to know about the car was that it had not previously been involved in a wreck.

■ It is the rule in Missouri and a great many other states that an owner may testify as to the reasonable value of an article of personalty which has been damaged or destroyed without further qualification. State ex. rel. Spears v. McCullen, 357 Mo. 686, 210 S.W.2d 68, 72; Keeton v. Sloan's Moving and Storage Co., Mo.App., 282 S.W.2d 194(10); West's Missouri Digest, Evidence, ■ The weight and value of such testimony is for the trier of the fact. 3 Wigmore, Evidence (3rd ed.) § 716, p. 48; 20 Am.Jur. Evidence, § 892, p. 751; State ex. rel. Terry v. Ace Storage & Moving Co., Mo.App., 135 S.W. 2d 363(9). But the qualification of the owner as a witness to value does not rest on the fact that he has legal title, but rather on the fact that *ordinarily* the owner knows the property intimately and is familiar with its value. 32 C.J.S. Evidence § 546(116), p. 434; Finn v. Indemnity Co. of America, Mo.App., 297 S.W. 175, 176; Winthrop Products Corp. v. Elroth Co., 331 Mass. 83, 117 N.E.2d 157. In Hood v. M. F. A. Mutual Insurance Co., Mo.App., 379 S.W.2d 806, supra, at 812 we said, through Stone, J., that judicial liberality in permitting an owner to testify as to market value should not be treated as an unrestricted license to engage in guesswork. We are extremely doubtful as to whether Mrs. Langdon showed herself competent to testify as to *value* (which she did not do), even though she was a co-owner. We feel quite sure that the evidence did not show such knowledge and familiarity as to qualify her to testify concerning the extent and amount of the damage suffered in the wreck. See Le

Brun v. Richards, 291 P. 825, 72 A.L.R. 336, 343; Barron v. Phelps, Ky., 238 S.W.2d 1016, 1018.

This was a 1960 automobile. The collision occurred in 1963. There is no evidence as to the condition of the car before the wreck except the testimony that it had never been in a wreck. We do not know how many miles it had traveled, how worn out it was, what parts, if any, were in need of replacement, nor what its general condition was. There is no evidence that all the things done to recondition the automobile were made necessary by the collision with the defendant. The plaintiff was entitled to the equal in restoration, but she was not entitled to have worn out or previously broken parts or accessories replaced by new ones at the defendant's expense. She was not entitled to a new car in order to replace an old one. She was not entitled to profit or enrichment because of the collision. She was entitled to recover the difference in market value before and after, and there was no satisfactory evidence as to what such difference amounted to.

In this situation we believe that plaintiff has established liability and that such issue was "fully developed and fairly tried" (Hufft v. Kuhn, Mo., 277 S.W.2d 552), and is "not free from doubt" (Caen v. Feld, Mo., 371 S.W.2d 209). We believe that the ends of justice require that the finding of liability should be sustained but that the case should be remanded for trial on the issue of damages only.[1]

Accordingly, the case is reversed and remanded for retrial of the issue of damages only.

STONE and HOGAN, JJ., concur.

1. See Supreme Court Rule 83.13, V.A.M.R.; Curtis v. Fruin-Colnon Contracting Co., Mo., 363 Mo. 676, 253 S.W.2d 158; Leavitt v. St. Louis Public Service Co., Mo.App., 340 S.W.2d 131; Hotchner v. Liebowits, Mo.App., 341 S.W.2d 319; Spalding v. Robertson, Mo., 357 Mo. 37, 206 S.W.2d 517.