Donald R. CASADA and Kathy Casada, Plaintiffs-Respondents,

v.

HAMBY EXCAVATING COMPANY, INC., Defendant-Appellant.

No. 10536.

Missouri Court of Appeals, Springfield District.

Dec. 26, 1978.

James W. Newberry, Schroff, Keeter, Glass & Newberry, P. C., Springfield, for defendant-appellant.

Charles A. Moon, Springfield, for plaintiffs-respondents.

Before HOGAN, P. J., STONE, J., and GRIMM, STEELMAN and McHANEY, Special Judges.

HOGAN, Presiding Judge.

This is a blasting damage case. Plaintiffs have had a verdict and judgment in the amount of $24,970. Defendant appeals.

In briefest sketch, the record shows that in February 1975, defendant was constructing a sewer line in the southwest part of Springfield, Missouri, using ammonium nitrate and dynamite to excavate the trench. By February 18, operations had progressed to a point 130 feet directly east of the plaintiffs' residence. On that day, defendant's employees detonated two series of explosive charges at a depth of "approximately seventeen foot."[1] Apparently, not all the explosive (probably the ammonium nitrate), was detonated on February 18. On February 20, defendant determined that

---

1. Defendant's employee Stewart explained that each charge consisted of a quantity of ammoni- um nitrate, one capped stick of dynamite, and a "light charge . . . to help crack the top."

the trench west of plaintiffs' residence was not deep enough. A small charge of dynamite, "half a stick," according to Stewart, was placed in a 2-foot hole and covered with "three to four foot" of dirt. Although Stewart did not expect anything untoward to happen, when he ". . . pushed the plunger, there was rock started flying." "[T]hat time," Stewart testified, the rock and debris ". . . just all went right straight west." Being asked if he had any doubt that rock and debris were thrown against plaintiffs' residence, Stewart straightforwardly replied "No, I heard glass and all." The order of force of the explosion is illustrated by testimony that a 40-pound rock was thrown 130 feet through the air against plaintiffs' residence, tore a window, complete with casement, out of the west side of the house and passed through a wall opposite the window into another room.

The only points briefed and argued in this court have to do with the award of damages. Defendant's first point, as stated, is: "[T]he trial court gave Instructions 4 and 5, offered by plaintiffs over defendant's objection thereto and refused Instruction "A" offered by defendant. This action was prejudicially erroneous because plaintiffs failed to adduce proof of difference in fair market value of their property sufficient to support submission of that theory of damages to the jury." This claim of error is in fact a sufficiency point, but the defendant does not contend that the fact or cause of plaintiffs' damage was not established; it is the sufficiency of plaintiffs' proof of the *amount* of loss to which defendant excepts.

Plaintiffs claimed and presented proof of damage to both real and personal property. Considering first plaintiffs' proof of damages to personal property, we note that on direct examination, plaintiff Kathy Casada was shown Plaintiffs' Exhibit 2, two sheets of paper, which Kathy identified as a "list of articles that was damaged in the explosion." Kathy had prepared the list "the

day after" the explosion but had "figured value before and value after at a more recent time." At the time the list was prepared, Kathy put down "what I gave for it and how old [the particular item] was." Upon offer of the exhibit, defendant's counsel objected to the exhibit's being received "in toto" because it did not "fall within the proper criteria to be an exhibit passed to the jury." Counsel had no objection to the exhibit's being used to refresh Kathy's memory.

As it appears before us, Plaintiffs' Exhibit 2 consists of two sheets of lined paper, upon which are listed 34 items of personal property. Included are such items as a "Batman Transister [sic] Radio," pillows, mattress covers, a "74 Indian Motorcycle" and other articles one might expect to find in any middlewestern household. For each item, there is a "price," a "value before," an "age" and a "value after." Five of the items are shown as having some salvage value; the others are shown as having none.

Plaintiff Kathy Casada was shown the list and was asked to "tell the jury each item that was damaged, when you purchased that item, what you paid for it, the condition of it and what it was worth." Without any preliminary objection, Kathy read the figures from Plaintiffs' Exhibit 2 to the jury. Upon cross-examination, counsel for defendant asked several questions directed to the basis for Kathy's opinion. In particular, our attention is called to the following interrogation by defendant's counsel:

\* \* \* \* \* \*

". . . As I understand it then, you made your own judgment. Of course, you knew what you paid. You made your own judgment as to whether there had been a decrease in value just before the occurrence and whatever the decrease was after the occurrence?

A. Yes.

Q. *Based on your own personal informa-tion* and nothing else. Correct?

A. Yes." (emphasis supplied).

\* \* \* \* \* \*

The objection to plaintiffs' evidence concerning damage to their realty is that the only witness who gave evidence concerning the value of the Casada residence before the explosion was plaintiff Donald Casada. Mr. Casada testified that he had acquired his residence "approximately six months" before the explosion occurred. The price he agreed to pay was $29,950. Upon direct examination, the following questions were put to Donald:

\* \* \* \* \* \*

"Q. . . . Now on—immediately before this explosion, what did you consider the fair market value of your home—of the home itself, not— A. What we give [sic].

Q. And that was twenty-nine thousand nine hundred and fifty dollars? A. Sure.

Q. And you had made some improvements on it, hadn't you?

A. Yeah. Oh, trees and shrubs and stuff like this, you know, but it don't really—no, you know, no big dollar valuation or nothing but it's [sic] improvements.

Q. You considered it [sic] value just the same? A. Sure."

\* \* \* \* \* \*

As authority for its contention that there was no substantial evidence of the damage to plaintiffs' real and personal property, defendant cites one sentence from a single case, *Bridgeforth v. Proffitt,* 490 S.W.2d 416 (Mo.App.), decided by this court in 1973. In that case, plaintiffs Bridgeforth sued in tort on the ground that defendants negligently allowed fire to escape, causing plaintiffs' trailer and the contents to burn. This court reviewed plaintiffs' evidence of damages to personalty and concluded that there was no evidence from which a jury could have found or inferred the fair market value of plaintiffs' personalty immediately before the fire. In the course of the opinion, we stated "[N]either original cost nor plaintiffs' subjective opinions as to 'value' or 'worth' of used articles of personalty may be equated with or substituted for 'fair market value.'" Defendant has seized upon this one sentence as supporting its argument that there was no proof of plaintiffs' damage here. Certainly the statement of the court applied to the facts of *Bridgeforth* was apt, but it was not intended as a rigid, inflexible pronouncement applicable to all cases whatever the facts might be, nor was the opinion meant to prescribe the language in which a qualified witness' opinion must be expressed. Defendant has mistakenly interpreted the opinion.

The point of *Mayor, etc., of City of Liberty v. Boggess,* 321 S.W.2d 677, 681–682[4–6] (Mo.1959); *Bridgeforth v. Proffitt,* supra, 490 S.W.2d at 425[13–15]; *Langdon v. Koch,* 393 S.W.2d 66, 70 (Mo.App.1965), and like precedents is this: ordinarily an owner may testify as to the reasonable value of an item of personalty which has been damaged or destroyed without further qualification. *Carnell v. Dairyman's Supply Company,* 421 S.W.2d 775, 779[9] (Mo.1967); *Langdon v. Koch,* supra, 393 S.W.2d at 70[6]; 3 H. Wigmore, Evidence § 716, p. 56 (Chadbourn Rev. 1970). Further, the owner of a parcel of realty may testify to the value of his land, even though he does not qualify as an expert. *Esmar v. Zurich Insurance Co.,* 485 S.W.2d 417, 423–424[8, 9] (Mo.1972); *State ex rel. State Highway Commission v. Northeast Building Company,* 421 S.W.2d 297, 301[3] (Mo.1967). The qualification of an owner as a witness to the reasonable value of his property is usually held to rest on the assumption that an owner is familiar with the characteristics of his property, has some acquaintance with its actual and potential uses and some experience in dealing with it. Generally, this competency is assumed whether the proper-

ty taken or damaged is a parcel of realty, *United States v. Sowards,* 370 F.2d 87, 92[15] (10th Cir. 1966); *Esmar v. Zurich Insurance Co.,* supra, 485 S.W.2d at 423–424[8, 9]; *Shelby County R–IV School District v. Herman,* 392 S.W.2d 609, 613 (Mo. 1965); 3 H. Wigmore, supra, § 714, p. 50, or a chattel. *Langdon v. Koch,* supra, 393 S.W.2d at 70[6]; *Finn v. Indemnity Co. of America,* 297 S.W. 175, 176 (Mo.App.1927); Annot., 37 A.L.R.2d 967, 982–984, § 5 (1954).

■ Nevertheless, the owner's competence is a quality in the nature of a rebuttable presumption, and if it is shown upon a qualifying voir dire or upon cross-examination that the owner in fact lacks knowledge of the value at issue, or that his opinion is based on an improper standard, then a trial court may exclude or strike out the owner's opinion, and if the opinion is erroneously received, a court on appeal may reverse for want of substantial evidence of damage. Otherwise put, when the foundation for the owner's opinion collapses, so does the opinion. See: *United States v. Sowards,* supra, 370 F.2d at 91 (owner's valuation of land based on location of coal deposit "reflected only a future hope"); *Shelby County R–IV School District v. Herman,* supra, 392 S.W.2d at 613 (owner attempted to estimate value of a farm based on capitalization of net profits for one year); *Langdon v. Koch,* supra, 393 S.W.2d at 70 (only knowledge plaintiff had was that her automobile had been previously involved in a wreck). The principle that an owner's opinion may in fact be wholly without foundation is vividly illustrated by the record itself in *Bridgeforth v. Proffitt,* supra, 490 S.W.2d 424. There plaintiff testified that he had lost a "record player." Upon cross-examination, plaintiff was asked the age of the record player. He answered ". . . [A]pproximately seven years of age." Cross-examination proceeded thus:

\* \* \* \* \* \*

"Q. The valuation that you gave the jury is $250.00? A. Yes sir.

Q. . . . That had been used seven, eight or nine years. Is that correct? A. Yes, sir.

Q. Had you attended any auctions in the neighborhood where furniture is auctioned off or sold? A. No Sir.

Q. Have you priced record players in a furniture store . . .?

A. Not no used furniture, no.

Q. Do you have any idea as to what this record player would have sold for on the market? A. Today?

Q. On April the 8th, 1970? A. Well no sir, . . .

Q. Well what I'm talking about, what a seven or eight year old record player would have sold for that had been used on April 8th, 1970. *Do you have any idea as to the market value of it?*

A. *No sir, I do not.* (emphasis added). MR. CLARK: All right, I'll ask the Court that that . . . be stricken and that the jury be instructed to disregard the valuation placed on the record player by this witness.

(discussion off the record)

THE COURT: All right, the objection will be overruled. You may proceed."

\* \* \* \* \* \*

The foregoing quotation is illustrative; Bridgeforth also claimed damage in the amount of $300 because of the loss of phonograph records—"[J]ust a little bit of everything." On cross-examination, it was shown that Bridgeforth had used the records nine years; he had attended no sales where used records were sold; he had never "checked" to see what a used record might sell for in a used furniture store, and finally admitted he had no idea what the value of a used record would be if he were trying to sell it. Plaintiff also set a value of $250 upon a used television set, "five or six or seven years" old. Plaintiff was again asked "Do you have any idea as to the market value of a five or six or seven year old, nineteen inch, black and white T.V.?" and

he answered "No sir, I don't." Defense counsel asked much the same questions and received equally negative answers concerning every chattel claimed to have been lost, and at the close of Bridgeforth's testimony, moved the trial court to strike plaintiffs' testimony "concerning the valuation of these items" and to admonish the jury to disregard the valuation. The trial court refused. So, the foundation for the owner's opinion having been entirely demolished, this court properly concluded ". . . that there simply was no evidence from which the triers of the facts properly could have found the fair market value of plaintiffs' personalty immediately before the fire." *Bridgeforth v. Proffitt,* supra, 490 S.W.2d at 425. We stand firmly upon what was said there, but it is not controlling on this appeal.

In *Bridgeforth,* it was effectively demonstrated on cross-examination that the plaintiffs' opinions were wholly without foundation in fact or experience; in the case at hand, it was shown that plaintiff Kathy Casada's opinion was only her proper opinion, but that showing was not sufficient to destroy the assumption, or presumption, that she had some special acquaintance with and familiarity with the characteristics and uses of her own personal property. As to plaintiffs' evidence of the value of their personalty, what was said in *Keeton v. Sloan's Moving and Storage Company,* 282 S.W.2d 194, 199[11] (Mo.App.1955), is apt here:

> ". . . [A]ny lack of professional experience on the part of [plaintiff] in regard to the valuation of the property affected went only to the weight and not to the competency of her testimony. She was testifying about articles with which she and most housewives are familiar and her testimony was sufficient proof of the value of the goods both before and after [the property was damaged by fire]. . . ."

See, also, *Seyfarth v. St. Louis & Iron Mountain R. R. Co.,* 52 Mo. 449, 451–452

(1873); *State ex rel. Terry v. Ace Storage & Moving Co.,* 135 S.W.2d 363, 368[9] (Mo. App.1940); *Finn v. Indemnity Co. of America,* supra, 297 S.W. at 176.

Neither can it be said that plaintiffs' evidence of value of their residence before the explosion was so wholly lacking in probative value as to be insubstantial. Plaintiff Donald Casada testified that he had been willing to pay $29,950 for the residence approximately six months before the explosion. That was the fair market value of the residence immediately before the explosion. Casada had made some minor improvements on the grounds. Plaintiff Kathy Casada described the property, and photographs introduced in evidence were sufficient to indicate that prior to the explosion and contrary to defendant's suggestion, the residence had not deteriorated. There was substantial evidence of the value of the residence before the explosion.

It follows that defendant's first assignment of error is without merit. Instructions 4 and 5 submitted the issue of damages substantially in the language of MAI Nos. 4.02 and 16.02. Defendant's first assignment of error is not an exception to the *form* of Instructions 4 and 5, but a complaint that there was no evidence to support their submission. Inasmuch as defendant's tendered Instruction "A" was an instruction withdrawing the issue of damages to personalty, it also follows that tendered Instruction "A" was properly refused.

Defendant's second assignment of error is stated as follows: "[T]he trial court gave Instructions 4 and 5, offered by Plaintiffs, over Defendant's objection and refused Instructions "B", "C" and "D" offered by Defendant. This action was prejudicially erroneous because the only properly submissible theory of damages under the evidence was the cost of repairing plaintiff's property." The essence of this complaint is that the trial court should have submitted the cost of repair as the measure of damages, rather than instructing the jury, as it did,

that if the jury found for the plaintiffs, then it would award plaintiffs the diminution in the fair market value of plaintiffs' "residence, contents and automobile" before and after they were damaged. This assignment, in part, rests on defendant's construction of the evidence. In part, with deference to quite able counsel, it reflects a fundamental misunderstanding of the law governing instructions to juries.

■ Defendant contends there is no substantial evidence establishing the diminution in the fair market value of plaintiff's property. We find this argument wholly without merit. Both plaintiffs fixed the reasonable value of their residence before the explosion at $29,950. This represented the sum they had been willing to pay, and had obligated themselves to pay, about 6 months before the residence was damaged. Plaintiff Kathy Casada gave as her opinion that the fair market value of the property after it was damaged was between $3,000 and $3,500. Plaintiff Donald Casada was of the opinion that the fair market value of his property was $29,950 before the explosion, and after some prodding by counsel, testified that the fair market value of the residence after it was damaged was $4,000. As the authorities cited plainly show, an owner of property is ordinarily qualified to give his opinion as to the value of his own property even though he is not a real estate expert. *Esmar v. Zurich Insurance Co.*, supra, 485 S.W.2d at 423–424. It was in no wise demonstrated, either by preliminary voir dire, by cross-examination or by any other means that plaintiffs had used an erroneous method of valuing their property, and their opinions, if they were "advisory" in nature, were nevertheless substantial evidence. It was for the jury to determine the weight and credibility to be given plaintiffs' opinions. *Kirst v. Clarkson Const. Co.*, 395 S.W.2d 487, 494–495 (Mo.App.1965).

The contention that "one" of the defendant's three tendered instructions should have been given is likewise without merit. This argument is based on defendant's construction of the evidence, with which we do not fully agree but shall take as true for the purposes of this opinion. In addition to their own testimony concerning the amount their property had diminished in value as a result of the explosion, plaintiffs had the evidence of a consulting engineer. The engineer testified, in substance, that the only way to restore the Casada residence to its pre-explosion condition would be to ". . . tear the structure down and redo it." Counsel then asked: "Q. Would that, in your opinion, have been the only way to have put [the Casada] house back into the condition it was immediately prior to the explosion?" The engineer's answer was "yes." Plaintiffs also offered a repair "proposal" which indicated the cost of repair would be $12,260.36. There is a controversy between the parties whether the engineer's testimony touching this repair proposal amounted to a statement that the residence could be restored for $10,000. We do not agree that the engineer's testimony amounted to an admission that the cost of restoration was $10,000, but it is unnecessary to set forth the testimony word for word. If $10,000 was the cost of repair, the diminution in value greatly exceeded that figure. By the most cheerful of plaintiffs' estimates, the diminution in value was $24,950.

Defendant's tendered Instruction "B" would have advised the jury that if it found for the plaintiffs' then it would award plaintiffs the reasonable cost of repair of any damage to the residence. Tendered Instruction "C" advised the jury that if it found the issues for the plaintiffs, then it would award plaintiffs the reasonable cost of repair of any damage to plaintiffs' residence, contents and automobile. Tendered Instruction "D" advised the jury that if it found for the plaintiffs, it would award them: (a) the reasonable cost of repair of the residence plus (b) the diminution in market value of the contents of the residence and the automobile sustained as a result of the explosion.

■ Instruction "C" was properly refused because there was no evidence of the

cost of repair of the contents of the residence or the automobile. As authority for the proposition that Instructions "A" or "C" should have been given, defendant relies on *Curtis v. Fruin-Colnon Contracting Co.*, 363 Mo. 676, 253 S.W.2d 158 (1952); *Donnell v. Vigus Quarries, Inc.*, 526 S.W.2d 314, 316–317[5] (Mo.App.1975); and *Decker v. J. E. Sieben Const. Co.*, 492 S.W.2d 155, 157[1] (Mo.App.1973). These authorities, defendant says, "mandate submission of one of defendant's tendered damage instructions."

■■■ *Curtis v. Fruin-Colnon Contracting Co.*, supra, 363 Mo. at 686, 253 S.W.2d at 164[12], stated the general rule to be that the measure of damages for tortious injury to real property is the difference in fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount. Such is undoubtedly the general law. D. Dobbs, Remedies § 5.1 (1976). The two other cases cited do indeed repeat what was held in *Curtis v. Fruin-Colnon Contracting Co.*, supra, but they are not controlling here. The language in which the measure of damages is put to a jury is controlled by Rule 70.01(b), which requires giving an applicable Missouri Approved Instruction to the exclusion of any other, if the formulary contains an appropriate instruction. Since September 1, 1969, the instruction approved for use in cases involving property damage only has been MAI 4.02, which was given here. True enough, the "Committee's Comment" to MAI 4.02 notes that in some "rare" cases the cost of repair is the appropriate measure of damages, but the cost of repair is not appropriately stated as the measure of damages when the diminution in value greatly exceeds the cost of restoration. This limitation applies to tortious injury to structures affixed to the plaintiffs' land, *City of Kennett v. Akers*, 564 S.W.2d 41, 50[12] (Mo. banc 1978); *Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co.*, 223 S.W.2d 100, 104–105 (Mo.App.1949), or to items of personalty. *Groves v. State Farm Mut. Auto. Ins. Co.*, 540 S.W.2d 39, 43[5] (Mo.

banc 1976). Because the diminution in value greatly exceeded the cost of repair in this case, the cost of repair was not plaintiffs' measure of damages, and the trial court did not err in refusing tendered Instructions "B" and "D".

■■■ The defendant's final point is that the trial court erred in denying defendant's motion for new trial because the jury's award of damages was wholly unsupported by the evidence, was contrary to the evidence, was against the weight of the evidence and was grossly excessive under the evidence. This point is based on the assumption that plaintiffs' own testimony concerning the reasonable value of their property before and after the explosion cannot be accepted as substantial. That assumption, as we have held, is unwarranted, and we find no merit in the assignment of error. What was said of the plaintiffs' contention that the verdict was wholly inadequate in *Kirst v. Clarkson Const. Co.*, supra, 395 S.W.2d at 494–495[10, 11][12], is true with respect to the defendant's contention that the verdict is excessive. The credibility of the witnesses and the weight to be accorded their testimony were matters for the jury. *Kirst v. Clarkson Const. Co.*, supra, 395 S.W.2d at 495[12]. All the evidence considered, the verdict was within the range of values testified to, and we cannot say, in light of the controlling principles, that it was excessive. See *DeArmon v. City of St. Louis*, 525 S.W.2d 795, 801[10–12][13][14] (Mo.App.1975). For the reasons indicated, the judgment is affirmed.

All of the Judges concur.