**Fannie ADAMS, Plaintiff–Respondent,**

v.

**ORKIN EXTERMINATING COMPANY, Defendant–Appellant.**

**No. 54501.**

Missouri Court of Appeals, Eastern District, Division Three.

Dec. 6, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 4, 1989.

Application to Transfer Denied Feb. 14, 1989.

Ted L. Perryman, Mark R. Bates, St. Louis, for defendant-appellant.

William R. Gartenberg, Clayton, for plaintiff-respondent.

DOWD, Presiding Judge.

Defendant, Orkin Exterminating Company, appeals from a judgment entered on a jury verdict of $65,000 in a breach of contract suit. We modify and affirm.

The evidence viewed most favorably to the verdict is as follows. Plaintiff, Fannie Adams, purchased her home in 1976. At that time she had ordered a termite inspection and no termites were found.

In the fall of 1981, plaintiff noticed that bugs were flying around in her house and called Orkin for an estimate. Orkin came and indicated she had termites and left a contract and proposal for her to review.

In April of 1982, plaintiff entered into an agreement that for a certain dollar amount, defendant would initially treat the house, provide annual inspection and retreat if necessary with an option to renew each year. Defendant indicated that there was no damage to plaintiff's home at that time. Defendant was then required to initially treat the house.

In April of 1983, plaintiff noticed termite activity. She contacted defendant who sent representatives out to inspect. While termites were evident, retreatment was not given until July of 1983. The contractual relationship continued until April of 1985 when plaintiff did not renew the retreatment agreement. This lawsuit followed.

■ Defendant's first point on appeal may be construed to say that the trial court erred in awarding damages to plaintiff where a clause in her contract expressly limited defendant's liability to retreatment of her house. The pertinent part of the contract is as follows:

Lifetime Retreatment Guarantee

Subject to the graph and specifications and the general terms and conditions, Orkin will issue a Re-treatment guarantee which obligates Orkin, at no extra cost, to apply any necessary additional treatment to the premises if an infestation of subterranean termites is found in the premises during the effective period of the guarantee. The buyer understands that Orkin's liability under this guarantee is limited to Re-treatment only. The buyer expressly waives, and releases Orkin from liability for any claim for damages to the structure or its contents occasioned by an infestation of subterranean termites.

Defendant argues that since plaintiff purchased this "guarantee," defendant is released from all liability under the contract, except for the obligation to re-treat the premises if necessary. We disagree.

The contract states that: "The type Guarantee [that the Buyer has chosen] will be issued to the Buyer upon completion of initial treatment." We find the evidence is such that a jury, consistent with plaintiff's theory, could reasonably find that defendant failed to initially treat plaintiff's home. Plaintiff's expert testified that he found

"dummy holes"[1] on the premises indicating that no initial treatment had been performed. Where the initial treatment had not been performed the limitation of liability found in the guarantee would be of no effect.

In addition, defendant relies on *Wilcher v. Orkin Exterminating Company, Inc.,* 145 Ga.App. 551, 244 S.E.2d 101 (1978). In that case, the plaintiff sued Orkin for negligence in failing to properly treat his home. The contact had a similar retreatment guarantee and liability limitation. The *Wilcher* court stated " 'the same contract which raises Orkin's duty to [Wilcher] limits that duty to retreatment, and [Wilcher] has not contended that Orkin failed to retreat the premises when requested' " *Id.* 244 S.E.2d at 102 (quoting *Orkin Exterminating Company v. Stevens,* 130 Ga.App. 363, 203 S.E.2d 587, 592 (1973)). Thus, the limitation applied.

In this case, however, plaintiff further contends in her pleadings that defendant breached the terms of the agreement "in failing to honor the terms of the Lifetime Retreatment Guarantee by failing to inspect or retreat plaintiff's premises." Therefore, *Wilcher* does not apply.

Furthermore, plaintiff argues that the brochure within which the contract was contained had language that was contrary to the liability limiting language in the contract, therefore, an ambiguity results which must be resolved against the party who prepared the contract. While we feel this argument might have merit, as *Behr v. Blue Cross Hospital Services, Inc.,* 715 S.W.2d 251, 255 (Mo. banc 1986), supports the inclusion of the brochure as a part of the contract, this issue need not be addressed at this time. Point denied.

Defendant's next three points challenge the verdict and we will address them collectively. Defendant claims: first, that there is no substantial or competent evidence of causation of damages to support the verdict; next, that there is no substantial evidence to support a verdict in this amount;

finally, that the verdict is excessive. We modify and enter a judgment that conforms to the evidence submitted.

Rule 84.14 provides that an "appellate court shall award a new trial or partial new trial, reverse or affirm the judgment or order of the trial court, or give such judgment as the court ought to give. Unless justice otherwise requires the court shall dispose finally of the case."

The measure of damages for a breach of contract suit is measured by the amount of money which will compensate for the loss which the performance of the contract would have prevented. *Boten v. Brecklein,* 452 S.W.2d 86, 93 (Mo.1970). The appropriate measure of damages where the injury is to real property is the difference in the fair market value of the property before and after injury or the cost of restoring the property, whichever is the lesser amount. *Evinger v. McDaniel Title Company,* 726 S.W.2d 468, 475 (Mo.App. 1987).

A review of the trial record reveals substantial evidence that the termite damage occurred after the initial treatment and that defendants inaction greatly promoted the deterioration of the house. Plaintiff's expert testified that the cost of repair would be $32,000. Plaintiff testified that the diminution in value of her home was $30,000. Thus, the appropriate amount of damages is $30,000 and not $65,000 which was assessed in the jury verdict.

Judgment is modified to make the total judgment $30,000 and as modified the judgment is affirmed.

PUDLOWSKI, C.J., and SIMON, J., concur.

---

**1.** "Dummy holes" are holes that enter only a few inches into concrete, rather than going all the way through to the ground.