

# Missouri Court of Appeals

## Southern District

### Division Two

DAVID A. JUNGERS and )
LEISA JUNGERS, husband and wife, )
Individually and as Trustees of the )
DAVID A. JUNGERS TRUST, )
Dated May 15, 2001, )
      )
     Plaintiffs-Appellants, )
      )
v. ) No. SD35582
      ) Filed: June 12, 2019
WEBSTER ELECTRIC COOPERATIVE, )
INC., a Missouri Corporation, )
      )
     Defendant-Respondent. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Jason Brown, Circuit Judge

### **AFFIRMED**

Plaintiffs David and Leisa Jungers, individually and as trustees of the David A. Jungers Trust (collectively referred to as the Jungers), filed suit against Defendant Webster Electric Cooperative, Inc. (Webster) for damages allegedly caused by the negligent installation of a transformer in the Jungers' home. Webster paid to repair the damage. At the time the alleged damage occurred, the Jungers were in the process of selling their home under a contract for deed, and the buyers later backed out of the sale. The Jungers sought damages from Webster resulting from the lost sale. Webster moved for summary judgment.

The legal basis for the motion was that the Jungers' damages were limited to cost of repair. The trial court agreed. The court decided that the Jungers were barred from recovering the additional damages they sought, either in the form of diminution of fair market value or for the loss of the benefit of the bargain from the contract for deed. Because the Jungers were not entitled to these additional damages and Webster had already paid the cost of repair, the trial court entered summary judgment in Webster's favor.

Presenting two points on appeal, the Jungers contend the trial court misapplied the law in limiting damages to the cost of repair because: (1) they were also entitled to recover consequential damages, which include loss of the benefit of the bargain under the contract for deed; and (2) alternatively, they were not precluded from recovering damages for diminution of value where the repair costs were insufficient to restore the property to its pre-injury value. Finding no merit to either point, we affirm.

**Standard of Review**

A summary judgment shall be granted "[i]f the motion, the response, the reply and the sur-reply show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law[.]" Rule 74.04(c)(6); *Schnurbusch v. W. Plains Reg'l Animal Shelter*, 507 S.W.3d 675, 679 (Mo. App. 2017).[1] "Facts come into a summary judgment record *only* via Rule 74.04(c)'s numbered-paragraphs-and-responses framework." *Jones v. Union Pac. R.R. Co.*, 508 S.W.3d 159, 161 (Mo. App. 2016) (italics in original). Thus, when reviewing a summary judgment, we review the undisputed material facts established by the process set forth in Rule 74.04(c). *Alvis v. Morris*, 520 S.W.3d 509, 511-12 (Mo. App. 2017). "We view the record in the light most favorable to the non-moving

---

[1] All references to rules are to Missouri Court Rules (2019).

2

party, drawing all inferences in that party's favor." ***Progressive Max Ins. Co. v. Hopkins***, 531 S.W.3d 649, 651 (Mo. App. 2017); *see also* ***Lindsay v. Mazzio's Corp.***, 136 S.W.3d 915, 920 (Mo. App. 2004).

As a defending party, Webster can establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements facts; (2) the claimant, after an adequate period of discovery, has been unable, and will not be able, to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) the undisputed facts support each of the necessary elements of the defending party's properly pleaded affirmative defense. ***ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.***, 854 S.W.2d 371, 381 (Mo. banc 1993). "Each of these three means establishes a right to judgment as a matter of law." ***Lindsay***, 136 S.W.3d at 920. Because the propriety of summary judgment is purely an issue of law, we review the grant of a summary judgment *de novo*. ***Id***. at 919.

### Factual and Procedural Background

The material facts are not in dispute. Prior to or during construction of the Jungers' residence at issue in this case, Webster installed a pad-mounted electrical transformer on the property. Webster ran an 800-amp electrical service from the transformer through underground conduits to the electrical panel in the basement of the house.

In February 2009, the Jungers agreed to sell the property for $4.45 million under a contract for deed to the Edwards (hereinafter referred to as the Edwards' contract). In partial performance of this contract, the Edwards paid $1.2 million to the Jungers at that time, with the balance to be paid in installments through November 2009. The Edwards took possession of the property in March 2009.

3

By early May 2009, water accumulated in the transformer and drained through the conduits into the electrical panel. Webster paid $4,780.84 to repair the damage to the property caused by the May water intrusion. In mid-June 2009, Webster lengthened the conduits within the transformer and filled them with silicone caulking to prevent water from entering.

In September 2009, the Edwards filed suit against the Jungers to rescind the Edwards' contract.[2] The suit was later settled, with the Edwards returning the property to the Jungers, and the Jungers refunding $1 million of the Edwards' initial payment to them. The Jungers retained $200,000 of that payment.

Thereafter, the Jungers sold a portion of the property for $670,000. They later separately sold the house and the remaining property for $2.5 million to the Groves (Groves' contract).

In April 2014, the Jungers filed a single-count petition alleging that Webster negligently installed the transformer, which permitted water to invade the property. The petition further alleged that Webster's negligence caused: (1) the value of the property to diminish by more than $1 million; and (2) the Jungers to lose the benefit of the bargain they had made under the Edwards' contract and incur other incidental damages.

In February 2018, Webster moved for summary judgment. Webster argued that its payment of the costs to repair the damage precluded the Jungers from recovering any additional damages, including damages for diminution of value or the loss of the Edwards' contract.

---

[2] According to the Jungers, the Edwards sought rescission of their contract "on the grounds that Jungers failed to disclose prior water leakage in the basement, which allegations Jungers denied."

4

In April 2018, the trial court entered an order partially granting and partially denying summary judgment. With respect to real property damages, the court granted a partial summary judgment that limited such damages to the previously paid cost of repair:

> Court finds no genuine issue of material fact that the repairs to the property were successful, and the cost thereof constituted a tiny, insignificant fraction of the alleged diminution of value of the property. The Court also finds, and [the Jungers] candidly conceded at oral argument, that they cannot recover *both* the diminution *and* the benefit of the bargain of the Edwards contract. Court finds, based upon the undisputed facts, that as it pertains only to the damage to the property itself, the proper measure of damages is the cost of repair, which [Webster] has already paid.

(Italics in original.) However, with respect to the "alleged personal, consequential damages stemming from the loss of the (rescinded) Edwards' contract[,]" the court denied summary judgment. The court found that genuine issues of fact exist as to whether such damages were "caused by [Webster's] alleged negligence, and, whether such damages go beyond and are sufficiently separate from the alleged damage to the property itself."

In May 2018, the Jungers modified their calculation of damages to total $1,230,329.69. The new total consisted of the difference between the Edwards' contract of $4.45 million and Groves' contract of $2.5 million, less credit for proceeds retained at rescission ($200,000) and from the sale of a portion of the property ($670,000), plus interest paid on a line of credit to repay the Edwards in the amount of $150,329.69. With respect to repairs to the property, the Jungers also stated that "[a]ll repairs known or believed to be related to the water intrusion" were paid by Webster.

In June 2018, Webster filed a motion to clarify the ruling on the damages issue. After hearing argument on the motion, the court clarified that, "to the extent [the Jungers] seek to recover damages for the difference between the total amount of the Edwards' contract and the (combined) amounts for which they later sold the separate parcel of land and house, said difference is merely a manifestation or alternative form of diminution of value, and given

5

the Court's prior findings, is not submissible here." The court further decided that "other, personal consequences of the rescinded Edwards contract allegedly caused by [Webster's] negligence, and not measured by diminution of value, may be sought. Such items might include interest charges, closing costs, real estate commissions, moving expenses and the like. It appears MAI 4.01 will apply."[3]

Thereafter, the Jungers amended their answer to Webster's damage interrogatory to withdraw *all* claims for damages *except* those arising from the difference between the Edwards' and Groves' contracts, less applicable credits. In response, Webster moved the court to reconsider its ruling on Webster's previously filed summary judgment motion in light of this amended interrogatory answer.[4]

In mid-June 2018, the trial court entered a complete summary judgment in Webster's favor for the following reasons: (1) there were no compensable property damages potentially recoverable by the Jungers because the cost-of-repair rule governed the Jungers' damage claims and precluded any additional damages for diminution of value; (2) Webster had paid all such repair costs; and (3) the difference between the Edwards' and Groves' contracts for

---

[3] The relevant version of this instruction, **MAI 4.01 [2002 Revision] Personal and Property** (7th ed. 2012), provides in relevant part:

> If you find in favor of plaintiff, then you must award plaintiff such sum as you believe will fairly and justly compensate plaintiff for any damages you believe plaintiff sustained [and is reasonably certain to sustain in the future] as a direct result of the occurrence mentioned in the evidence.

(Footnotes omitted.) "In general, MAI 4.01 is used when personal and property damage is involved, whereas MAI 4.02 is used in cases involving property damage only." *St. John's Bank & Tr. Co. v. Intag, Inc.*, 938 S.W.2d 627, 629 (Mo. App. 1997).

[4] The Jungers' counsel stated the Jungers "have no procedural objection (under Rule 74 or otherwise) to the Court reconsidering its Summary Judgment rulings in light of [the Jungers'] amended interrogatory answer withdrawing all damage claims except the Edwards/Groves contract differential."

6

the purchase of the property was "merely a manifestation or alternative form of diminution in value" damages. This appeal followed.

## Discussion and Decision

"The goal of awarding damages is to compensate a party for a legally recognized loss." *Ameristar Jet Charter, Inc. v. Dodson Int'l Parts, Inc.*, 155 S.W.3d 50, 54 (Mo. banc 2005); *see also* *First Bank v. Fischer & Frichtel, Inc.*, 364 S.W.3d 216, 224-25 (Mo. banc 2012) (party should be fully compensated for its loss, but not recover a windfall). "The particular facts and circumstances of each case dictate which measure of damages is appropriate." *Gee v. Payne*, 939 S.W.2d 383, 385 (Mo. App. 1997). "The proper measure of damages is a question of law for determination by the trial court." *Id*.; *Green v. Study*, 286 S.W.3d 236, 242 (Mo. App. 2009).[5]

The Jungers contend the trial court misapplied the law by limiting damages to the cost of repair. The Jungers argue that they are entitled to recover: (1) consequential damages that include loss of the benefit of the bargain under the Edwards' contract (Point 1); or, in the alternative, property damages for diminution of value (Point 2). For ease of analysis, we will address these points out of order.

### Point 2

The Jungers' second point contends the trial court misapplied the law by concluding that Webster's payment of the cost to repair the damage precluded the Jungers from

---

[5] Damages is an essential element of the Jungers' claim. *See* *Meyer v. City of Walnut Grove*, 505 S.W.3d 331, 335 (Mo. App. 2016) (to present a cognizable claim of negligence, a plaintiff is required to show that defendant had a legal duty to plaintiff, that defendant breached that duty, and plaintiff suffered resulting damages caused by defendant's negligence). Webster's summary judgment motion argued that the Jungers could not establish damages, including cost-of-repair damages, since Webster had already paid all costs of repair.

7

recovering additional damages "for diminution in the value of damaged property that has been repaired where the repair costs are insufficient to restore the property to its pre-injury value." We disagree.

"The general rule is that the measure of damages for tortious injury to real property is the difference in the fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount." *Farmer's Mut. Fire Ins. Co. v. Farmer*, 795 S.W.2d 104, 108 (Mo. App. 1990). The rationale for this long-standing rule is set out in *Curtis v. Fruin-Colnon Contracting Co.*, 253 S.W.2d 158 (Mo. 1952):

> The general rule is that the measure of damages to real estate is the difference in the value of the land before and after the injury by trespass or negligence. However, where damaged land or a building thereon can be restored to its former condition, at a cost *less* than the diminution in value, the cost of restoration may be recovered. Thus this restoration rule of recovery is applicable only to cases where the cost of restoration is *less* than the difference in the value of the land before and after the injury and can never apply in any case where the cost of restoration is greater than the value of the land or building.

*Id*. at 164 (italics in original); *see Jack L. Baker Companies v. Pasley Mfg. & Distrib. Co.*, 413 S.W.2d 268, 273 (Mo. 1967) ("where damaged property can be restored to its former condition at a cost less than the diminution of value, the cost of restoration is the proper recovery"); *Kelley v. Widener Concrete Const., LLC*, 401 S.W.3d 531, 540 (Mo. App. 2013) (in real property cases, courts generally utilize the "diminution in value" test, turning only to the "cost of repair" test when it constitutes a lower amount of recovery); *Tull v. Hous. Auth. of City of Columbia*, 691 S.W.2d 940, 942-43 (Mo. App. 1985) (in surveying the cases which applied the cost-of-repair test, it is clear this test is applied "to situations where repairs amount to a small percent of the diminution in value"); *Gulf, M. & O. R. Co. v. Smith-Brennan Pile Co.*, 223 S.W.2d 100, 104-05 (Mo. App. 1949) (cost-of-repair damages

appropriate "where the amount of damage is insignificant, as compared to the value of the property as a whole and involves only a small part thereof").

Here, there is no question that the cost of repair is insignificant as compared to the value of the property as a whole. Webster paid a total of $4,780.84 for repairs, which represents less than four-tenths of 1% (*i.e.*, 0.00398403) of the $1.2 million the Jungers allege was the diminution of fair market value of the residence. This is clearly "a small percent of the diminution in value." ***Tull***, 691 S.W.2d at 942-43; *see, e.g.*, ***Jack L. Baker Companies***, 413 S.W.2d at 273 (repairs $3,000, diminution $13,380 *i.e.*, about 22%); ***Kirst v. Clarkson Constr. Co.***, 395 S.W.2d 487, 493-94 (Mo. App. 1965) (repairs $315, diminution $5,500 *i.e.*, about 6%); ***Beaty v. N.W. Elec. Power Coop.***, 296 S.W.2d 921, 925 (Mo. App. 1956) (repairs $500, diminution $1,500 to $5,000 *i.e.*, 10-30%). The trial court here relied on undisputed facts that "the repairs to the property were successful, and the cost thereof constituted a tiny, insignificant fraction of the alleged diminution of value of the property." Thus, according to the long-standing general rule, the trial court correctly determined that the cost of repair is the proper measure of damages in this case.

The Jungers argue the general rule established above "is subject to exception" when cost of repair is "insufficient to make plaintiffs whole." To support that argument, they rely exclusively on ***Casada v. Hamby Excavating Co.***, 575 S.W.2d 851 (Mo. App. 1978). The Jungers' reliance on that case is misplaced because it is factually distinguishable.

In ***Casada***, plaintiff's home was damaged by defendant's blasting operation. *Id*. at 852. An "engineer testified, in substance, that the only way to restore the Casada residence to its pre-explosion condition would be to '… tear the structure down and redo it.'" *Id*. at 857. The trial court instructed the jury that "if the jury found for the plaintiffs, then it would award plaintiffs the diminution in the fair market value of plaintiffs' residence, contents and

9

automobile before and after they were damaged." *Id*. (internal quotation marks omitted). This damages instruction was properly given because it authorized the recovery of damages for the diminution in value of the home, if the jury believed the engineer's testimony. The defendant's tendered Instruction B was properly refused because it only authorized the jury to award the reasonable cost of repair for the residence as damages. *Id*. This instruction would not have permitted the jury to award damages for the full diminution of value of the home, even if the jury believed the engineer's testimony that the house would have to be rebuilt. This unusual fact pattern has never recurred, so far as we can tell, in any subsequent case and certainly is not the fact pattern in the case at bar. Since *Casada* was decided, it has been repeatedly cited as supporting the general rule "that the measure of damages for tortious injury to real property is the difference in fair market value of the property before and after the injury or the cost of restoring the property, whichever is the lesser amount." *Id*. at 858; *see*, *e.g.*, *Farmer's Mut. Fire Ins. Co.*, 795 S.W.2d at 108; *Evinger v. McDaniel Title Co.*, 726 S.W.2d 468, 475 (Mo. App. 1987); *Larabee v. City of Kansas City*, 697 S.W.2d 177, 181 (Mo. App. 1985); *Culver-Stockton Coll. v. Missouri Power & Light Co.*, 690 S.W.2d 168, 172 (Mo. App. 1985); *DeLisle v. Cape Mut. Ins. Co.*, 675 S.W.2d 97, 103-04 (Mo. App. 1984).[6] Thus, *Casada* does not support the Jungers' contention that they are entitled

---

[6] Since *Casada* was decided, this general rule of damages for tortious injury to real property has been well recognized and often cited. *See Kelley*, 401 S.W.3d at 541; *Twin Chimneys Homeowners Ass'n v. J.E. Jones Constr. Co.*, 168 S.W.3d 488, 503 (Mo. App. 2005); *Ridgway v. TTnT Dev. Corp.*, 126 S.W.3d 807, 814 (Mo. App. 2004); *Leonard Missionary Baptist Church v. Sears, Roebuck & Co.*, 42 S.W.3d 833, 836 (Mo. App. 2001); *Smith v. Woodard*, 15 S.W.3d 768, 773 (Mo. App. 2000); *Jordan v. Stallings*, 911 S.W.2d 653, 663 (Mo. App. 1995); *Kueffer v. Brown*, 879 S.W.2d 658, 666 (Mo. App. 1994); *Plunk v. Hedrick Concrete Prod. Corp.*, 870 S.W.2d 942, 944 (Mo. App. 1994); *Hinkle v. Emmons*, 826 S.W.2d 359, 362 (Mo. App. 1992); *Adams v. Orkin Exterminating Co.*, 763 S.W.2d 318, 320 (Mo. App. 1988).

to damages for diminution of value, rather than the cost of repair. Accordingly, the trial court did not misapply the law in determining that the cost-of-repair damages are the appropriate measure of property damages in this case. Point 2 is denied.

*Point 1*

The Jungers' first point contends the trial court misapplied the law by concluding the costs to repair the damage precluded the Jungers from recovering "damages for the loss of the benefit of the Edwards' purchase contract … in addition to any property damages caused by [Webster's] negligence." According to the Jungers, they are entitled to recover damages for the loss of the benefit of the Edwards' contract "as distinct from and in addition to" the property damage. Based on the unique facts and procedural posture of this case, we disagree.

The purpose in awarding damages is to "make the injured party whole by monetary compensation." *Turner v. Shalberg*, 70 S.W.3d 653, 658 (Mo. App. 2002). A plaintiff may not, however, be made whole more than once. *Cason v. King*, 327 S.W.3d 543, 548 (Mo. App. 2010). "While a single transaction may invade more than one right and an injured party may sue on more than one theory of recovery, a plaintiff may not receive more than one full recovery for the same harm." *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 197 (Mo. App. 2007). Thus, a plaintiff must establish a separate injury on each theory, and may recover damages proved in two or more causes of action. *Id*. However, "[i]f the damages asserted in two causes of action are the same, the damage awards should be merged." *Id.*; *see Heckadon v. CFS Enterprises, Inc.*, 400 S.W.3d 372, 381 (Mo. App. 2013) (merger prevents a party from being compensated twice for the same injury).

Here, the trial court determined that the Jungers were attempting to recover twice for the same injury. The court specifically found that the "'benefit of the bargain' damages calculated as the difference between the Edwards' and Groves' sales contracts … is merely

11

a manifestation or alternative form of diminution of value, and given the Court's prior findings, is not submissible here." For the following reasons, we agree with the trial court.

We begin by noting that the Jungers conceded to the trial court that they could not recover *both* the diminution of value *and* the benefit of the bargain of the Edwards' contract. They recognized that the two types of damages are duplicative. Thereafter, the court correctly determined that, as to the damage to the property itself, the proper measure of damages is the cost of repair, which Webster already paid. The court further ruled, however, that the Jungers could potentially recover "personal, consequential damages stemming from the loss of the (rescinded) Edwards contract" if those damages "go beyond and are sufficiently separate from the alleged damage to the property itself." The court later even specified "other, personal consequences of the rescinded Edwards contract … not measured by diminution of value, may be sought. Such items might include interest charges, closing costs, real estate commissions, moving expenses and the like." Although the Jungers first amended their calculation of benefit-of-the-bargain damages to include "interest paid on loan/line of credit to repay Edwards[,]" they ultimately withdrew that alleged item of damages and included only "the difference between the Edwards and Groves sales contracts (less applicable credits)," which total $1,080,000.[7] This calculation, as we understand it, is the same measure of damages as the diminution of value, described in their petition generally as "an amount in excess of $1,000,000."

---

[7] A summary of the second-amended damages calculation is as follows:

| | |
|---|---|
| Original Sale: Jungers to Edwards | $4,450,000 |
| Less partial down payment proceeds retained at rescission | (200,000) |
| Less proceeds from separate sale of parcel | (670,000) |
| Less sale to Groves | (2,500,000) |
| Total damages | $1,080,000 |

12

We discern no substantive difference here between damages for diminution of value of real property and damages for the lost benefit of a contract to sell that real property. Although the Jungers argue that "[s]eparate and apart from the property damage, Webster's negligence contributed to cause the Edwards to renege on their agreement to purchase the property for $4.45 million, depriving plaintiffs of the economic benefit of that sale of the property[,]" such damages measure the same loss – the damage to the property in the form of diminution of value. Here, because damages for diminution of value are not the proper measure of damages, the Jungers are not entitled to recover such damages by simply mischaracterizing them as an alternative type of remedy.

Further, "benefit of the bargain" damages are typically the measure of damages in a breach of contract case. *Kincaid Enterprises, Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo. App. 1991); *see Turner*, 70 S.W.3d at 658 (damages for benefit of the bargain are "the value of the performance of the contract"). Such damages are also inappropriate here because this is not a contract case. *See, e.g.*, *Keveney v. Missouri Military Acad.*, 304 S.W.3d 98, 104 (Mo. banc 2010) (breach of contract includes the following elements: "(1) the existence and terms of a contract; (2) that plaintiff performed or tendered performance pursuant to the contract; (3) breach of the contract by the defendant; and (4) damages suffered by the plaintiff"). Webster was not a party to the contract for deed between the Jungers and the Edwards, and could take no action to breach or rescind that contract. The Jungers have no direct cause of action for breach of contract against Webster, and they have not attempted to assert such a claim. Because the Jungers and the Edwards settled their dispute, the Jungers cannot even establish that the Edwards breached the contract. Consequently, the Jungers have no claim against the Edwards (or anyone else) for breach of the Edwards' contract. *See, e.g.*, *Washam v. North*, 864 S.W.2d 4, 5 n.1 (Mo. App. 1993) ("[a]ppellant's arguments

13

appear to confuse theory of damages in a contract action (where a party may be entitled to the benefit of a bargain) with the theory of damages in tort").

We are not persuaded by the Jungers' argument that they are entitled to the benefit of the bargain of the Edwards' contract as "consequential damages." The Jungers rely on two cases recognizing that consequential damages can include lost profits from a business operated on property that has been negligently damaged. *See* ***Shady Valley Park & Pool, Inc. v. Fred Weber, Inc.***, 913 S.W.2d 28 (Mo. App. 1995) (awarding plaintiff consequential damages from businesses closing as a result of defendant's negligence because "this was not damage to real property alone"); ***Volume Services, Inc. v. C.F. Murphy & Associates, Inc.***, 656 S.W.2d 785 (Mo. App. 1983) (plaintiff was entitled to its prospective profits lost as a result of defendant's tortious conduct, over and above any related property damages). Here, however, the Jungers make no claim they were deprived of prospective profits from a business they were unable to operate using the subject property. In fact, they supplemented their answers to interrogatories to intentionally exclude every type of potential damage except for the difference between the purchase price in the sale contracts before and after the water intrusion. As previously established, the difference in the Edwards' and Groves' contracts amounts to nothing more than a measure of diminution of value.

The Jungers cite no other cases in which a Missouri appellate court has ever upheld an award of money damages for a lost sale – the same measure as the diminution of value – and for the cost to repair the same damage to real property. Accordingly, the trial court did not misapply the law in concluding that Webster's payment of the cost to repair the damage caused by Webster's alleged negligence precluded the Jungers from recovering additional damages for the loss of the benefit of the Edwards' contract. Point 1 is denied.

14

The judgment granting summary judgment in favor of Webster and against the Jungers is affirmed.


JEFFREY W. BATES, J. – OPINION AUTHOR

WILLIAM W. FRANCIS, JR., P.J. – CONCUR

DANIEL E. SCOTT, J. – CONCUR