RODGERS, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, March 27, 1906.

1. **STREET RAILWAYS: Negligence: Contributory Negligence.** Where a person approached two parallel street railway tracks and crossed immediately behind a car passing on the near track and drove onward across the further track before the passing car had time to get out of his line of vision and before he could see a car approaching on the further track from the opposite direction, he was guilty of negligence which contributed directly to the injury received by a collision with such car.

2. ———: ———: ———: **Last Chance.** But in an action for such injuries against the street railway company, where the evidence tended to show that the motorman by keeping a diligent watch could have seen him about to cross the track in time to have stopped his car and avoid the collision, it was proper to submit the case to the jury on the last chance rule.

3. ———: ———: ———: **Instruction.** And in such case an instruction which authorized a recovery but ignored the defense of plaintiff's contributory negligence, was erroneous, but cured by other instructions given on behalf of defendant which properly submitted that issue.

4. ———: ———: ———: **Last Chance.** And although there was no evidence as to the distance in which the car could have been stopped, where the evidence showed the motorman could have seen the wagon 150 feet away and did not begin to stop until half that distance away, and the car ran less than its

length after the collision, this was sufficient to submit the issue as to whether the motorman could have stopped his car in time to avoid the collision.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

AFFIRMED.

*George T. Priest* for appellant.

The court erred in overruling defendant's demurrer offered at the close of plaintiff's evidence. Where the facts show that the plaintiff moved from behind one car directly on to parallel tracks, without stopping to look, and was struck by a car coming from the opposite direction, he is guilty of such contributory negligence in failing to stop, look and listen as will bar him from all recovery. Giardina v. Railroad, 185 Mo. 330, 84 S. W. 928; Deane v. Transit Co., 91 S. W. 505; Green v. Railway, 90 S. W. 805; Hornstein v. Railways, 97 Mo. App. 271, 70 S. W. 1705.

*E. E. Wood* for respondent.

STATEMENT.—Olive street runs east and west through the city of St. Louis. It is crossed near Union Station by Nineteenth street, running north and south. In June, 1903, the defendant maintained a double railroad track in the center of Olive street, over which it operated cars for the carriage of passengers. At low twelve on the night of June 21, 1903, the plaintiff was driving south on Nineteenth street in a one-horse covered wagon. When he reached the south railroad track in Olive street, a car traveling east struck his wagon with such force as to throw him from the seat to the pavement, causing severe injuries to his person and damaging him, as found by the jury, in the sum of twenty-five hundred dollars.

Plaintiff's evidence tends to show that the night was

dark and foggy; that he was driving along in a trot on the west side of Nineteenth street, near the curb, and when he arrived within about ten feet of Olive street, a car traveling west came along and he stopped his horse with a sudden jerk; that as soon as the car passed, he drove on and as his wagon was passing over the south track it was struck near the hind wheels by an east-bound car. The wagon was pushed around but not injured in the least. Plaintiff, however, was hurled in the air and fell with his head in front of the rear trucks of the car, which, fortunately, had come to a standstill by the time he struck the ground. With respect to what took place at the scene of the accident, plaintiff's evidence is as follows:

"Q. You were going to the depot to meet a train? A. Yes, sir; to meet an excursion. . . .

"Q. You looked up and down to see if there was cars? A. Yes, sir.

"Q. What did you see? A. There was one pulled across, and I looked west, too, and I pulled up to let it go by.

"Q. Did you pull across behind or in front of it? A. Behind it. . . .

"Q. Then what did you do? A. I started across the track.

"Q. When your horse got over the second track, did you see a car coming then? A. I looked up the street and saw a car—it seemed to me, looked to be a hundred to a hundred and twenty-five feet away, and I whipped up my horses and tried to cross the track.

"Q. How far were you across then? A. I guess the horse had crossed the track."

On cross-examination plaintiff testified as follows:

'Q. You looked east and you looked west? A. Yes, sir.

"Q. And you stopped about ten feet from the track? A. Yes, sir.

"Q. And were you towards the left-hand side of the street or the right-hand side? A. Right-hand side.

Q. Right back up against the curb? A. Close to the curb; yes, sir.

"Q. There is buildings there flush with the corner, is there not? A. I am not sure about it but I don't believe it does. I think it is kind of a round corner there.

"Q. And the buildings are right on the building line there? A. Yes, sir; I think so.

"Q. So then you were right back up against the right-hand side of the curb, that is, you were on the right-hand side of the street, and you stopped ten feet from the track? A. Yes, sir.

"Q. And the buildings are right on the building line on that corner? A. Yes, sir.

"Q. And there was a car going west which had just stopped, hadn't it? A. Yes, sir.

Q. And it proceeded a few feet when you attempted to get across? A. It had left the crossing going west.

"Q. Did you notice how far that car had gotten up the street A. How far it had got west?

"Q. Yes. A. It had left there quite a few feet before I started, started to drive across the street.

"Q. You didn't stop and look after that? A. Yes, sir; I did.

"Q. You first stopped ten feet from the track? A. Yes, sir.

"Q. You then crossed the west track and stopped before entering the east track did you? A. No, sir.

"Q. Your only stop then was ten feet north of the west-bound track? A. Yes, sir.

"Q. And having looked, then you started right across? A. Yes, sir; I started right across when I saw there was nothing in sight.

"Q. You didn't see any car coming east on the east-bound track? A. No, I did not.

"Q. You didn't see any car at all? A. No, sir.

"Q. How far up the street could you see? A. Oh,

I think I could see, I guess I could see two hundred feet, I believe.

"Q. And is that as far up the street as you could see, two hundred feet?   A.   I could see that far that kind of a night.

"Q. You could not see any further up the street? A.   I might have seen up to the next corner.   I guess I could."

Witnesses, present at the scene of the accident, introduced by plaintiff, testified that they saw him crossing the street, saw the car coming from the west and hollooed to plaintiff to lookout, but he had gone too far to turn off the street and whipped up his horse in an effort to clear the track before the car could arrive, but was not quick enough.   Two boys testified for plaintiff, that they were riding on the front platform of the car; that the car had no headlight, was running at a rapid rate of speed, and that there was an electric light on the corner of Nineteenth and Olive streets, directly over the horse, and they could see the horse in the street when the car was half a block west of the crossing; that the motorman did nothing to stop the car until he was within about fifty feet of the wagon, when he commenced to turn on the brake.

The evidence shows that after striking the wagon, the car ran less than its length before coming to a stop, as one of the witnesses expressed it, "It was a good stop." There was countervailing evidence offered on the part of the defendant.

BLAND, P. J., (after stating the facts.) —. 1. There are two assignments of error relied on for a reversal of the judgment.   The first is that the court erred in refusing defendant's instruction in the nature of a demurrer to the evidence, offered at the close of plaintiff's case.   In support of this contention, defendant relies upon the case of Giardina v. Railroad, 185 Mo. 330, 84 S. W. 928.   In the Giardina case, the plaintiff stepped from behind a car on a parallel track and was

immediately struck by a car traveling in an opposite direction from that traveled by the car from behind which he had stepped. The car by which Giardina was struck was running at a high rate of speed, and the motorman in charge was guilty of negligence in failing to sound the gong as he approached the crossing. The trial court sustained a demurrer to the plaintiff's evidence, and the Supreme Court affirmed this ruling on the ground that the plaintiff was guilty of negligence that directly contributed to his injury. This ruling supports the minority opinion of this court in Hornstein v. United Railways Co., 97 Mo. App. 271, 70 S. W. 1105, where (at page 278) are collected the cases in this State, holding that a plaintiff cannot recover when his own evidence shows that he was guilty of negligence that directly contributed to his injury, notwithstanding the defendant was also guilty of negligence. Counsel for appellant cites Green v. Railroad, — Mo. —, 90 S. W. 805, and Deane v. Transit Company, — Mo. —, 91 S. W. 505, as having approved and followed the Giardina case. The opinions in these two cases are not at hand, but we have no doubt that the ruling is well established in this State, that where the plaintiff's own evidence conclusively shows he was guilty of negligence that directly contributed to his injury, a verdict against him should be directed by the court, although the evidence shows that the defendant was also guilty of negligence; and we think that in this case, plaintiff's own evidence shows that he was guilty of negligence in failing to remain stationary on Nineteenth street until the west-bound car had proceeded far enough to be out of his line of vision so that he could see whether or not a car was coming from the west on the other track, and too near to allow him to cross the street in safety. But there is another principle of the law almost universally acknowledged, which we think takes the plaintiff's case out of the rule, that a plaintiff should be nonsuited when his own evidence shows that his negli-

gence concurred with that of the defendant to produce the injury. This principle is nowhere better stated than by Shearman & Redfield on Negligence. It is as follows:

"It is now perfectly well settled that the plaintiff, may recover damages for an injury caused by the defendant's negligence, notwithstanding the plaintiff's own negligence exposed him to the risk of injury, if such injury was more immediately caused by the defendant's omission, after becoming aware of the plaintiff's danger, to use ordinary care for the purpose of avoiding injury to him. We know of no court of last resort in which this rule is any longer disputed; although the same rule, in substance, but inaccurately stated, has been made the subject of strenuous controversy. But, furthermore, the plaintiff should recover, notwithstanding his own negligence exposed him to the risk of injury, if the injury of which he complains was more immediately caused by the omission of the defendant, after having such notice of the plaintiff's danger as would put a prudent man upon his guard, to use ordinary care for the purpose of avoiding such injury. It is not necessary that the defendant should actually know of the danger to which the plaintiff is exposed. It is enough if, having sufficient notice to put a prudent man on the alert, he does not take such precautions as a prudent man would take under similar notice. This rule is almost universally accepted. The most reckless presistence, on the part of one exposed to danger, will not justify another in consciously refraining from using care to avoid injury to him. This qualification of the doctrine of contributory negilence, often called 'the rule in Davis v. Mann;' from the leading case on this subject has been much criticised. But those criticisms turn mainly upon the language used by Naron Parke in that case, which is, perhaps, too broad, and which has not been here adopted although it has been literally repeated in the highest court of England, as well as in that of the United States. It is possible, too, that the application of the principle in Davis v. Mann

was erroneous; but that does not affect the validity of the principle which lay at the foundation of that case. That principle is that the party who has the last opportunity of avoiding accident, is not excused by the negligence of any one else. His negligence, and not that of the one first in fault, is the sole proximate cause of the injury." [1 Shearman & Redfield on Negligence (5 Ed.), sec. 99.]

This statement of the principle is approvingly quoted by this court in Klockenbrink v. Railroad, 81 Mo. App. l. c. 356; and the opinion of this court was approved and the principle declared to be the settled law of the Supreme Court in Klockenbrink v. Railroad, 172 Mo. 678, 72 S. W. 900. Expressions are to be found in some recent opinions of the Supreme Court which seem to qualify or restrict the application of this principle, but there is no case to be found in our Supreme Court reports that authoritatively overturns or in any wise weakens this salutary principle of the law. The plaintiff's evidence tends to show that had the motorman discharged the duty he was under, both at common law and under the ordinance offered in evidence, to keep a watch ahead and on the first appearance of danger use reasonable care to check or stop his car to avoid colliding with plaintiff's wagon, the accident would not have happened. We think, on this evidence, plaintiff was entitled to have his case submitted to the jury.

2. The second assignment is that the court erred in giving the following instruction for plaintiff:

"1. The court instructs the jury that if they believe from the evidence that the plaintiff was driving on Nineteenth street of the city of St. Louis, on the twenty-first day of June, 1903, and that while he was crossing the tracks of the defendant, the St. Louis Transit Company, at the intersection of Nineteenth street with Olive street of the said city, plaintiff's vehicle was struck by a car operated by defendant, the St. Louis Transit Company, on account of the failure of the motorman of the said

defendant to use ordinary care in stopping the said car with the means and appliances at hand and with safety to the passengers upon the first appearance of danger to the said plaintiff, whereby the said plaintiff was injured, then they should find in favor of the plaintiff and against the said defendant, unless they believe that the plaintiff himself was guilty of negligence at the said time and place."

The instruction ignores the defense of contributory negligence pleaded in the answer, but we think this omission was cured by the following instructions given for defendant:

"10.   Although the jury may find from the evidence that defendant's, the St. Louis Transit Company's, agents in charge of the car did fail to sound any bell or gong on said car, and did not stop or slow up said car and avert the collision, and did not keep a watch for persons on or approaching the track, and did not stop the car in the shortest time and space possible after the first appearance of danger, still, if you find from the evidence that plaintiff saw the approaching car, or, by looking, could have seen said car in time to have kept the horse and wagon off the track and avoid the collision, and failed to see or heed what he saw, then the plaintiff cannot recover and your verdict must be for the said defendant.

"11.   If the jury find from the evidence that the plaintiff's alleged injuries were caused by the mutual and concurring negligence of plaintiff and the defendant's, the St. Louis Transit Company's, motorman in charge of said car, and that the negligence of either, without the concurrence of the negligence of the other, would not have caused the injury, then your verdict must be for the said defendant."

"12.   If the jury believe from the evidence that plaintiff was driving a wagon south on Nineteenth street, and that Nineteenth street was crossed by the railroad tracks of the defendant, St. Louis Transit Company, laid

in Olive street, then it was the duty of plaintiff, in approaching said street railway tracks to look in the direction from which the car was approaching and also to listen for the purpose of ascertaining whether a car was approaching or not, and if he found by such means that a car was approaching so near that there was danger of a collision, then it was the plaintiff's duty to stop before going upon the track and let the car pass without delay or hindrance; and if the jury find from the evidence that the plaintiff failed to look or listen or if he looked or listened, that he failed to heed what he saw or heard, and to stop his horse and keep off the track, and that said failure directly contributed to plaintiff's alleged injuries, then the plaintiff cannot recover and your verdict must be for the defendant.'

With these instructions before them, the jury could not have lost sight of the defense of concurring or contributory negligence. Plaintiff's instruction correctly declares the principle of what is commonly called the "last fair chance doctrine" and was appropriate under the evidence in the case. It is insisted, however, that as there is no evidence in the record that the car could have been stopped sooner than it was, or as to the distance in which it could have been stopped, it was improper to submit to the jury to find whether or not the car could have been stopped, in time to have avoided the injury. The two witnesses, on the front platform with the motorman, testified that they saw the horse on the track one-half block (one hundred and fifty feet) from the crossing. If they saw the horse, the motorman also saw him or would have seen him, if he had looked, as it was his duty to do. These two witnesses also testified that the motorman did not begin to apply the brakes until the car had run from seventy-five to one hundred feet from the point where they first saw the horse on the track; and all the evidence shows that the car did not run its full length after it struck the wagon. On this evidence, the inference is irresistible that had the motorman applied

the brakes when he first saw, or by the exercise of ordinary care would have seen the horse on the track, the car would have been stopped in ample time to have avoided the collision.

Discovering no reversible error in the record, the judgment is affirmed. All concur.