Joseph Floyd HARRIS, Plaintiff-Respondent,

v.

QUALITY DAIRY COMPANY, a Corporation, Defendant-Appellant.

No. 32713.

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 26, 1967.

Application for Transfer Denied Feb. 12, 1968.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, Robert Nagel Jones, St. Louis, for defendant-appellant.

Marvin G. Marshall, Hoffman & Shostak, St. Louis, for plaintiff-respondent.

SAM E. SEMPLE, Chief Judge.

This is a suit to recover damages for personal injuries suffered by plaintiff and damage to his automobile as a result of a rear end collision. Plaintiff obtained a verdict in sum of $4,000 for personal injuries and $175 for damages to his automobile. Defendant appeals from the judgment rendered on the verdict. The parties will be generally referred to as they were designated in the trial court.

The collision occurred on Page Avenue in the City of St. Louis while both plaintiff's automobile and defendant's truck were traveling west. Plaintiff was following a public service bus and defendant's truck was following plaintiff immediately before the collision. The bus pulled over and stopped to discharge passengers.

Plaintiff's version of the facts were these: He followed the bus in the right lane of traffic and when the bus stopped to discharge passengers he stopped about 30 feet directly in back of the bus and turned on his left turn blinker light so that when the traffic in the next lane to his left cleared he could pull out and go around the bus. He looked in his rear-vision mirror and saw defendant's truck approaching from the rear at about 30 miles per hour about four car lengths back of his car, that he looked away and shortly his car was struck in the rear by defendant's truck. That after the collision his car was about 10 feet from the rear of the bus. Plaintiff stated that all the time he was stopped back of the bus he was sitting in his car with it in gear, with his brakes firmly set and his left blinker light turned on.

Defendant's version of the facts were that: The bus which plaintiff was follow-

ing pulled over to the curb to discharge passengers and when it stopped only about two feet of the rear end of the bus remained in the lane that both plaintiff and defendant's truck were traveling. Defendant's driver testified that when the bus pulled over to the curb to discharge passengers he thought that plaintiff was going to proceed on going straight and when plaintiff came to a sudden halt his truck hit the rear of plaintiff's car. Defendant's driver also testified that plaintiff gave no signal that he was going to stop or turn left before he stopped his car and that plaintiff's car was alongside the bus with the rear end of the car even with the rear end of the bus when plaintiff stopped just prior to the collision.

Plaintiff submitted his case under the rear end collision doctrine and a contributory negligence instruction was given on the theory plaintiff stopped without first giving an adequate and timely signal of his intention so to do. Defendant requested and the trial court refused to give Instruction No. G, which reads as follows:

"Your verdict must be for defendant if you believe:

"First, Plaintiff was negligent as submitted to you in Instruction No. _____, and

"Second, defendant was negligent as submitted to you in Instruction No. _____, and

"Third, Such negligence of both plaintiff and defendant combined and concurred to cause directly and proximately the collision mentioned in evidence."

Defendant contends that the trial court erred in refusing to give Instruction G and argues that one of the rights belonging to defendant is that if the evidence established that if both plaintiff and defendant were guilty of proximal, causal, mutual and concurrent negligence then plaintiff cannot recover against defendant. Defendant argues that this is a matter of substantive right in which he was entitled to have Instruction G separately submitted to the jury in addition to the contributory negligence Instruction No. 5 which was given to the jury by the court. Defendant relies on a line of cases involving the contributory negligence of a plaintiff, wherein the negligence of a defendant in that affirmative defense is presupposed. Citing Doisy v. Edwards, Mo., 398 S.W.2d 846; Hornstein v. United Rys. Co. of St. Louis, 97 Mo.App. 271, 70 S.W. 1105; Tillman v. St. Louis Transit Co., 102 Mo.App. 553, 77 S.W. 320; Rodgers v. St. Louis Transit Co., 117 Mo. App. 678, 92 S.W. 1154, 1156; Schaabs v. Woodburn Sarven Wheel Co., 56 Mo. 173, 174.

■■ It is true that no one can recover for an injury of which his own negligence in part or in whole was the immediate and proximate cause. Schaabs v. Woodburn Sarven Wheel Co., supra; Doisy v. Edwards, supra. However, it has been held that the better practice is to give only one instruction fully and clearly covering the subject of contributory negligence than to give a number of instructions with useless repetitions using the term concurrent, etc., Jones v. Rash, Mo., 306 S.W.2d 488, 492; Barr v. Missouri Pac. R. Co., Mo., 37 S.W. 2d 927, 930.

In this case the defendant requested and the court gave Instruction No. 5 covering its defense of contributory negligence which read in part as follows:

"Your verdict must be for the defendant, whether or not defendant was negligent, if you believe: * * *."

■ This instruction clearly and succinctly directed the jury to find for the defendant "whether or not defendant was negligent" if they believed the stated facts that plaintiff was guilty of contributory negligence. The instruction covered the situation where the jury could find both parties negligent. The giving of Instruction G would have been repetitious and the trial court properly refused the instruction.

Defendant next assigns as error the giving of Instruction No. 4 because it permitted the jury, in determining the damages to be awarded plaintiff, to take into consideration future pain and suffering when defendant asserts there was no evidence tending to establish that plaintiff would suffer in the future. At the trial plaintiff testified that prior to the accident on June 15, 1964, that he had never had any difficulties with his back, neck or shoulders and that he had never seen a doctor for any condition relative to his back, neck or shoulders. That at the time of the trial on May 2, 1966, plaintiff testified that he still had headaches and that he had pains that started in his neck and went all the way down to the lower part of his back. Dr. Hoard testified on behalf of plaintiff that he first treated plaintiff on the evening of the day of the accident. That his diagnosis was that plaintiff had a cervical sprain and strain, a lumbar sprain and a sprain of the right shoulder. That he gave plaintiff cortizone, a muscle relaxant, and ultrasonic treatments to the back, neck and shoulder. That he saw plaintiff 18 times within the two months following the accident giving ultrasonic treatment and medication for pain. That he examined plaintiff on the Saturday before the trial and plaintiff still complained of pain in the back and neck. Dr. Hoard gave the following testimony as to future pain:

"Q. Now, Doctor, would you now assume further and assume these statements as fact, that he has had this continuing pain since June 15 of 1964, referable to his back, shoulders and neck, and assume that this pain and discomfort is continuing until the present date; based upon reasonable medical certainty, if you have an opinion, do you have an opinion as to whether these injuries are permanent? A. Yes Q. All right. Will you tell the jury what your opinion is, based upon reasonable medical certainty? A. Since he is still complaining for two years, he will probably have some degree of back pain in all probability.

Q. In the future? A. In the future."

Defendant argues that the testimony of Dr. Hoard of the probability of future pain by plaintiff amounts to no more than mere speculation of the possible. It is noted that the quoted portion of Dr. Hoard's testimony came in without objection and there was no motion made to strike this testimony. It appears that the Doctor's testimony amounts to more than mere guess or conjecture. The evidence shows that plaintiff was under his care for a long time and plaintiff's complaints continued right up to the time of trial. Plaintiff's evidence concerning his injuries and the pain experienced up to the date of trial furnished a reasonable basis for an inference of future pain. The professional opinion of the expert witness was more than a mere assurance that future pain was scientifically possible. Williamson v. St. Louis Public Service Co., 363 Mo. 508, 252 S.W.2d 295, 301; Kenney v. J. A. Folger & Co., Mo.App., 192 S.W.2d 73, 78.

The testimony of the plaintiff that he was still suffering pain and discomfort at the time of the trial almost two years after the accident coupled with the testimony of Dr. Hoard that the pain would in all probability continue in the future is ample evidence to justify the giving of Instruction No. 4 on future pain and suffering. Pettus v. Dubman, Mo.App., 389 S.W.2d 373, 377, 378.

Defendant's next assignment is that the trial court erroneously limited defendant's cross-examination of Dr. Hoard. The transcript of the record reveals the following during Dr. Hoard's cross-examination:

"Q. There are a great many things which will cause the conditions you found of soreness and pain to the back and the neck, aren't there? A. Yes, sir, there are. Q. In fact, would you say, Doctor, that probably fifty percent of the people have trouble with their backs at one time or another? MR. MARSHALL: Well, Your Honor, I think that is an improper question and has no bear-

ing on the issues; it's irrelevant and immaterial. THE COURT: Sustained. (The following proceedings were had out of the hearing of the jury:) MR. SHEPPARD: The defendant now offers to prove by this witness that a great many people—I can't say that he would say fifty percent—but I anticipate probably he would, have trouble with their back who have never received any injuries of the character involved in this case. MR. MARSHALL: I will object to that. THE COURT: I will sustain it."

Defendant contends that the cross-examination was too restricted to permit defendant to thoroughly test the credibility and probative value of the testimony of witness Hoard.

 It is well established that wide latitude is to be allowed on cross-examination. No hard and fast rule can be laid down regarding the extent to which cross-examination may go, but any pertinent inquiry having some reasonable bearing on the issues in the case, or tending to impeach or discredit the witness is generally proper on cross-examination. Maul v. Filimon, Mo. App., 315 S.W.2d 859, 866. It is also well settled that the scope and extent of cross-examination of a witness in a civil case is discretionary with the trial court and this is particularly so with regard to collateral or immaterial matter. Hungate v. Hudson, 353 Mo. 944, 185 S.W.2d 646, 649, 157 A.L. R. 598; Maul v. Filimon, supra. Testimony that probably fifty percent of the people have trouble with their backs at one time or another or the offer of proof that a great many people have trouble with their back who have never received any injuries of the kind involved in this case is not relevant or material to any issue of plaintiff's injuries in this case. The trial court did not abuse its discretion by sustaining objections to this testimony.

Defendant next contends that plaintiff did not make a submissible case and the trial court erred in submitting the case to the jury. Defendant argues that as plaintiff was the only witness offered by plaintiff to testify as to how the accident occurred, his testimony was so inconsistent that he could not make a submissible case. Defendant bases this contention on plaintiff's testimony that the impact of defendant's truck with the rear of his automobile was so severe that the collision bent the rear bumper in and knocked out all of the tail lights and backup lights, bent the trunk lid, busted the motor mounts and knocked the linkage off of the transmission. Defendant then points to testimony of plaintiff " * * * if the motor mount is busted, the motor will drop down and you cannot shift or nothing." This particular testimony was objected to by defendant and asked to be stricken and the objection was sustained. Defendant then points to testimony that after the accident plaintiff drove his car on to work. Defendant appears to contend that a submissible case was not made because of a claimed conflict in plaintiff's testimony as to the severity of the impact and its results. Defendant cites Adelsberger v. Sheehy, 332 Mo. 954, 59 S.W.2d 644, 647, and other cases in support of its position.

 This contention is not well taken for several reasons. First, there is no showing that plaintiff's testimony was contradictory as his testimony that " * * * if the motor mount is busted * * * you cannot shift or nothing" was on objection of defendant stricken and could not be considered and thus could not be in conflict with plaintiff's testimony that he drove the car to work after the accident. Furthermore such conflict if it did exist goes only to the extent of the damage done to plaintiff's vehicle and not to the basic issue of liability of defendant. There was no dispute in the evidence that defendant's truck did collide with the rear end of plaintiff's vehicle. Taking the evidence in the light most favorable to the plaintiff and without restating the evidence it is concluded that plaintiff made a submissible case under the rear end collision doctrine. Hays v. Proctor, Mo.App., 404 S.W.2d 756, 758, 760.

Defendant's next assignment appears to be directed to the weight of the evidence. The contention made by defendant seems to be that plaintiff's testimony that he followed the bus and stopped behind it when the bus stopped and was hit from behind by defendant's truck with such a violent impact as to break the motor mounts on his car, knock the linkage off the transmission, and cause his personal injuries but was still able to drive his car on to work when considered with defendant's evidence that the bus pulled off to the right to discharge passengers and plaintiff continued on in an open lane and then stopped suddenly and the uncontradicted evidence that the impact was so light that the dairy goods on shelves of defendant's truck were not disturbed, established conclusively that plaintiff's evidence cannot be accepted. This contention obviously goes to the weight of the evidence which is for the jury to determine. " * * * There is, perhaps, no more firmly established doctrine than that on appeal from a judgment rendered on a verdict of a jury an appellate court is not authorized to weigh the evidence. * * *." Kells v. Pevely Dairy Co., Mo.App., 393 S.W.2d 61, 65. Whether a jury's verdict is against the weight of the evidence is a question for the trial court alone. Wilcox v. Coons, 362 Mo. 381, 241 S.W.2d 907, 917. The contention is without merit.

Defendant's last assignment is that the trial court over defendant's objection erroneously permitted plaintiff to express his opinion as to the reasonable market value of his automobile without plaintiff being qualified to express such opinion. Defendant cites the case of Landon v. Koch, Mo.App., 393 S.W.2d 66, 70, and argues that the mere fact plaintiff owned the vehicle does not qualify him to express an opinion of the market value as there must be some showing that he had acquired some ability to judge the vehicle and express an opinion on its value based upon more than a mere guess. This contention is not well founded. The record shows that when plaintiff was asked if he had an opinion as to the reasonable market value of his car prior to the accident, defendant's counsel asked to question plaintiff before the court allowed him to express such opinion. Plaintiff testified in answer to defense counsel's questions that he bought the car from a finance company for $1,250, that he tried to borrow money on the car and couldn't get more than $1,250 and that he looked at other cars to purchase and they all ran the same price. The court then overruled a defense objection that the witness was not qualified and permitted witness to testify that the value of the car was "about $1,250." The rule in Missouri as stated in Landon v. Koch, supra, is that an owner may testify as to the reasonable value of an article of personalty which has been damaged or destroyed without further qualification. The qualification of the owner as a witness to value does not rest on the fact that he has legal title, but rather on the fact that ordinarily the owner knows the property intimately and is familiar with its value. It is concluded that there was sufficient evidence here that plaintiff was familiar with the market value of this car as brought out by defense counsel's interrogation and the objection to the opinion of witness as to the market value of the car was properly overruled.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

ANDERSON, P. J., and WOLFE, J., concur.