Paul AMISH, Hughey F. Donnell and Sue J. Donnell, Bette Hays, Glen Hays, Ruth L. Kester and Warren W. Kester, Janice C. Lawrence and Nelson Lawrence, Thomas J. Lukomske, Harold Schiable and Vivian Schiable and Kathleen A. Van Dee and Larry Van Dee, Respondents-Appellants,

v.

WALNUT CREEK DEVELOPMENT, INC., Appellant-Respondent.

No. WD 31952.

Missouri Court of Appeals, Western District.

Feb. 9, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 30, 1982.

Applications to Transfer Denied May 17, 1982.

Howard E. Bodney, Kansas City, for respondents-appellants.

Albert Thomson, Daniel J. Flanigan, Kansas City, for appellant-respondent.

Before SHANGLER, Acting P. J., and WASSERSTROM and CLARK, JJ.

CLARK, Judge.

This is an action by residential property owners who suffered water damage to their homes and personal property when a lake and the stream above it overflowed their banks. The claims contended that the dam constructed by defendant to form the lake was negligently designed and maintained and that the flooding of their properties was attributable to these defects. A jury returned verdicts for damages as to all plaintiffs. Defendant's motion for a new trial was sustained as to some of the plaintiffs and judgment was entered on the verdicts as to others. All plaintiffs and the defendant appeal asserting the various errors hereafter described.

Plaintiffs own and occupy homes in a rural Platte County subdivision near a stream known as Walnut Creek. In early 1974, defendant completed construction of a dam to impound the waters of the creek and form a lake as a feature of a development which defendant projected. Heavy rainstorms occurred in May 1974 and in April 1975 and the water in the lake and in Walnut Creek upstream rose, inundating portions of plaintiffs' properties and causing the damages asserted in this suit.

The plaintiffs in the case are divided into two groups distinguishable by the location of their property below or above a passageway across Walnut Creek known as the upper reservoir crossing. This structure, built of concrete with barrel-type culverts for the flow of the creek water, is located some distance upstream from the lake itself. It was built long before the lake was formed and was intended to serve traffic crossing Walnut Creek. Group I plaintiffs are those whose properties are located between the dam and the upper reservoir crossing. Group II plaintiffs' properties are upstream on Walnut Creek above the upper reservoir crossing. Group I plaintiffs had judgment for actual damages in accordance with the jury verdicts. Group II plaintiffs were required to present their cases anew on the order of the trial court awarding defendant a new trial as to them.

■ Before considering the points on appeal raised by plaintiffs and defendant, it is first necessary to rule on plaintiffs' motion to dismiss defendant's appeal for failure of its jurisdictional statement to meet the requirements of Rule 84.04(b). The defect, apparent on cursory examination, is the absence of any statement describing the type of civil action pursued below. In place of the conventional statement of jurisdiction, defendant opens the text of its brief with an "Introduction." The jurisdictional statement follows. From the content of both, the nature of the action and the judgment appealed may be generally ascertained. While the format defendant adopted is not to be commended, application of the rules must be balanced against the appellate court's duty to finally dispose of each case on its merits where reasonably possible. *Cheatham v. Melton*, 593 S.W.2d 900, 903 (Mo.App.1980). Meritorious objection to the adequacy of a brief does not necessarily warrant the drastic remedy of dismissal. *General Plywood Corp. v. S. R. Brunn Construction Co.*, 511 S.W.2d 905, 907 (Mo.App. 1974). On these precepts, we deem the defect in defendant's brief not sufficient to justify dismissal of the appeal. The motion is overruled.

## APPEAL OF WALNUT CREEK DEVELOPMENT, INC.

As an aid to clarification of the issues, points on appeal by the several parties will

be separated for disposition and relevant additional facts added as appropriate. The contentions by defendant Walnut Creek Development, Inc. are (1) Neither Group I nor Group II plaintiffs made a submissible case as to causation of the flooding, (2) Group I plaintiffs did not prove their damages, (3) Group II plaintiffs are barred from recovery by their own evidence, and (4) Verdict directing and damage instructions for plaintiffs were erroneous and not supported by the evidence.

The first and third points above involve essentially the same question—what features of the terrain both natural and artificial caused or contributed to cause the overflow of the lake and Walnut Creek. The underlying facts were not disputed and these must be recounted as a basis for reviewing the evidence dealing with causation and, in turn, assessing the sufficiency of plaintiffs' proof to take the issue to the jury.

Before construction of the dam, Walnut Creek was a shallow and narrow stream which meandered through hilly, wooded terrain. Above the site of the upper reservoir crossing, the stream follows an "S" curve nearly doubling back on its path. At the time of the rainstorms in 1974 and 1975, the water quantity in the creek and, consequently, the water discharged into the lake increased and the rate of flow slowed.

The added water in Walnut Creek overflowed on plaintiffs' properties. Areas adjacent to the creek flooded for a substantial distance upstream, including the area where the "S" curve was located. The culverts in the upper reservoir crossing filled with water and debris and the water overtopped the crossing and spread out to either side. While the evidence was uncontroverted that all plaintiffs suffered damage from the overflow of waters which had remained within the banks of Walnut Creek before the dam was built, issue was joined on the extent to which the obstructions of the "S" curve and the upper reservoir crossing rather than defendant's dam caused the flooding. Quite apparently, the effect of these obstructions was materially different as to the two groups of plaintiffs, those above and those below the upper reservoir crossing.

The theory of plaintiffs' claims as tried and submitted to the jury was that their damages were caused by negligent design, construction and maintenance of the dam which lacked the capacity to release the downstream runoff from Walnut Creek. In essence, plaintiffs sought to establish that water backed up from the dam and flooded their lots. The defendant contended that the flooding was caused by blockage of water flow at the upper reservoir crossing and at the "S" curve in a period of abnormal rainfall. Plaintiffs and defendant each therefore relied on an expert witness to evaluate and calculate the volume of water which the dam spillway and an emergency floodway notch would discharge into the continuance of the creek below the dam.

Defendant's first point centers on the testimony of plaintiffs' expert witness, Warner. As a civil engineer, Warner evaluated the capacity of the dam spillway structure to convey runoff and expressed it as his opinion that the dam was adequate for a volume of water from storms occurring no more frequently than once in one hundred years. Warner also acknowledged he knew no elevations of the area terrain, that the "S" curve and the upper reservoir crossing contributed to cause the flooding and that the 1974 and 1975 storms were of less frequency than once in one hundred years. Warner, nonetheless, testified that the flooding would not have occurred but for the dam.

From this evidence by plaintiffs on the fundamental element of causation, defendant launches a two-prong argument to demonstrate that plaintiffs made no submissible case. First, Warner's testimony is characterized as self-contradictory because he concluded that the dam was responsible for the flood while acknowledging at the same time that the "S" curve and the upper reservoir

crossing caused overflow at those locations. Second, defendant asserts that Warner himself absolved defendant of any negligence in design and construction because he found the dam adequate to discharge runoff from storms of only one hundred year frequency. As to the inherent conflict in the testimony, defendant cites *Stephens v. Thompson*, 293 S.W.2d 392 (Mo.1956), among other cases, for the proposition that a plaintiff who relies on a sole witness to prove an element of the case makes no case if the witness gives conflicting statements or opinions permitting the jury to speculate on which version is correct.

Witness Warner did indeed attribute some flooding to the blockage of water flow at the "S" curve and the upper reservoir crossing, a circumstance which was self-evident from the presence of these natural and man-made diversions in the creek bed. Defendant overlooks, however, the general basis for Warner's conclusion that the dam caused the overflow and also the manner in which the uncertainty about Warner's findings entered the case.

Defendant's contention that it was entitled to judgment notwithstanding the verdict is equivalent to a directed verdict at the close of the evidence and, on review, the appellate court examines the evidence in the light most favorable to the party against whom the verdict is sought giving that party the benefit of all reasonable inferences and disregarding evidence and inferences to the contrary. *Beck v. Modern American Life Insurance Co.*, 589 S.W.2d 98, 101 (Mo.App.1979). Unless all reasonable persons in the exercise of fair, impartial judgment would arrive at the same conclusion, the question should never be withdrawn from the jury. Where uncertainty arises from conflicting testimony or where fair-minded persons would honestly draw different conclusions from undisputed facts, the question is not one of law but of fact to be settled by the jury. *Ogden v. Toth*, 542 S.W.2d 17, 19 (Mo.App.1976).

■ While Warner in his testimony acknowledged the factors of the "S" curve

and the upper reservoir crossing and the failure of the lake water to overtop the dam (an indication that the spillway was adequate), he also described the pooling effect which the standing body of lake water created. This pooling effect actually "stacks up" the down flow of the stream and creates a higher water level upstream from that existing at the dam. Fairly appraised and giving the evidence the benefit of all favorable inferences, Warner's testimony conveyed his opinion that the lake water backed up into the culverts of the upper level crossing, partially or wholly blocking the culverts, with further consequences upstream where an increased volume of water was seeking passage through the "S" curve. On this account, Warner concluded there would have been no flood if the dam had not been built.

Giving to plaintiffs the benefit of all favorable inferences, to which they are entitled on motion for directed verdict, a submissible case of negligence was made on Warner's testimony. While he did acknowledge the contribution to the flooding which resulted from the upper crossing and the "S" curve and he did evaluate the dam spillway as of adequate capacity, Warner nonetheless concluded that the design and placement of the dam, coupled with the upstream features described, created the pooling and, ultimately, the flood. All of these details were elements for the jury to weigh in arriving at its verdict. They do not destroy plaintiffs' case nor entitle defendant to a directed verdict.

Moreover, much of Warner's testimony characterized by defendant as contradictory and confusing was adduced on cross-examination designed to impeach the evidence given on direct examination. The rule concerning destructive contradictions on which defendant relies is applicable only to the respective elements of a witness's testimony at trial, not to contradictions between trial testimony and prior statements. *Atley v. Williams*, 472 S.W.2d 867, 870 (Mo.App. 1971). Here, defendant sought to discredit

Warner by use of his deposition and a written report Warner had prepared of his study of the Walnut Creek watershed. The jury was entitled to consider in evaluating Warner's testimony any prior conflicting statements. Such would go, however, to the witness's credibility, not to the submissibility of plaintiffs' case. *Wilson v. Missouri-Kansas-Texas Railroad Co.*, 595 S.W.2d 41, 44 (Mo.App.1980); *Statler v. St. Louis Arena Corporation*, 388 S.W.2d 833, 835 (Mo.1965).

Irrespective of the credence to which Warner's opinion may have been entitled on the issue of negligence, he was firm and consistent throughout in stating that there would have been no water overflow on plaintiffs' lands had the dam not been built. The evidence further showed that the flood occurred soon after the dam was constructed and that plaintiffs had not experienced water overflow from Walnut Creek previously. On settled law, that evidence alone made a submissible case irrespective of the negligence issue.

■ The rule is stated in *Dudley Special Road District of Stoddard County v. Harrison*, 517 S.W.2d 170, 176 (Mo.App.1974), quoting from *Corrington v. Kalicak*, 319 S.W.2d 888 (Mo.App.1959). "The basis of liability is the fact that the obstruction causes the water to overflow, encroach upon and inflict special damage to the property of another. It is the impounding of the waters to such an extent that an overflow occurs and a trespass results—a wrongful act—which fixes liability. Whether the impounding of the waters is intentional or accidental, whether the overflow is caused by negligence or without negligence, the agency obstructing the flow and causing the overflow of the waters of a natural watercourse to the damage of adjacent property owners is liable for its misfeasance in an action of trespass."

In *Kelso v. C. B. K. Agronomics, Inc.*, 510 S.W.2d 709 (Mo.App.1974), defendant had constructed a bridge over the river downstream from plaintiff's land. After a flood damaged plaintiff's land and crops, suit was brought claiming that the culverts in the bridge through which the river water was to pass were too small to accommodate the water with the result that water backed up on plaintiff's property. After verdict for plaintiff, defendant claimed there, as here, that plaintiff made no submissible case because no substantial evidence indicated defendant was negligent in the design and construction of the bridge. The court held proof of negligence to have been unnecessary because any obstruction in the flow of water in a natural watercourse resulting in injury to another person furnishes such person a right of action however careful the obstruction may have been made.

While plaintiffs in the subject case pleaded, presented and submitted their case on a negligence theory, the evidence that the flood would not have occurred but for the dam entitled them to go to the jury. The verdict directing instruction conditioning a plaintiffs' verdict on a finding that defendant was negligent undertook a higher level of proof than was required. Defendant may not complain that plaintiffs assumed a greater burden than necessary. *Curators of University of Missouri ex rel. Shell-Con, Inc. v. Nebraska Prestressed Concrete Co.*, 526 S.W.2d 903, 912 (Mo.App.1975).

Defendant additionally argues in its third point noted above that Group II plaintiffs not only made no submissible case but, as to them, their own evidence exonerated defendant. This follows, they say, because witness Warner affirmatively stated the flooding of property above the upper level crossing was caused by the insufficiency of the openings in the crossing.

A review of the record does not confirm the decisive effect which defendant attributes to Warner's testimony. Admittedly Warner agreed that water coming downstream in Walnut Creek could not pass through the culverts in the upper level crossing and therefore spread out and backed up to flood the lands of Group II

plaintiffs. To this extent, it was arguable that he established causation for the damage to these plaintiffs as the blockage from the crossing and not from the dam. Bearing in mind, however, that plaintiffs are entitled to all favorable inferences when defendant claims entitlement to a directed verdict, a contrary interpretation may also be contended to follow from Warner's evidence.

In the first place, Warner stated without qualification that the flooding of Group II plaintiffs' properties would not have occurred if the dam had not been built, the same opinion he expressed as to Group I plaintiffs. It was therefore a matter for the jury to decide whether Warner's conclusion as to causation was valid in view of his testimony concerning the inadequacy of the upper crossing culverts. Secondly, all the witnesses agreed that as Walnut Creek rose, it eventually overtopped the crossing and thus escaped downstream by this means. A conclusion could thereby be made that the crossing then ceased to be a factor in the overflow on properties of Group II plaintiffs.

As to defendant's points (1) and (3), the evidence was sufficient to withstand a motion for directed verdict at the close of the evidence and the trial court was therefore correct in refusing to enter verdicts n. o. v. for defendant.

Points (2) and (4) contend that defendant should have been awarded a new trial as to Group I plaintiffs and the arguments may therefore be addressed conjunctively. As will hereafter appear, defendant has assumed that the order for new trials as to Group II plaintiffs will be affirmed, hence the limitation of points (2) and (4) to the plaintiffs in Group I.

In these points, defendant asserts that a new trial was required because (a) the evidence offered by plaintiffs was insufficient to form an adequate basis for the jury to establish the amount of damage caused to plaintiffs' real and personal property, (b) Instruction No. 6 on damages erroneously failed to allow for apportionment of plaintiffs' damages among the various factors which contributed to cause the damage, and (c) Instruction No. 3, the verdict directing instruction, was not supported by the evidence in that there was no evidence to support a finding that defendant was negligent.

Defendant first challenges the sufficiency of plaintiffs' evidence as to damages by pointing out that values of personal property lost or damaged in the flood were set only by the bare assertions of plaintiffs as to what they considered the values of the items to be. Next, defendant objects that damage to plaintiffs' real estate was measured by before and after market values when repair costs were much less. In all, defendant asserts that no competent evidence proved damages and Instruction No. 6, the damage instruction, was erroneous.

■ Contrary to defendant's argument, plaintiffs were competent witnesses to testify, as owners, to the reasonable market value of their own personal property damaged or destroyed. *Harris v. Quality Dairy Co.*, 423 S.W.2d 8 (Mo.App.1967); *Hood v. M. F. A. Mutual Insurance Co.*, 379 S.W.2d 806 (Mo.App.1964). The lack of professional experience affects only the weight of such testimony, not the competence. *Keeton v. Sloan's Moving and Storage Co.*, 282 S.W.2d 194 (Mo.App.1955). The weight and value of an owner's testimony as to the reasonable value of damaged personalty is for the jury to determine. *Barber v. M. F. A. Milling Co.*, 536 S.W.2d 208 (Mo.App. 1976).

■ As to the diminished value of plaintiffs' real property, defendant's contention that the cost of repair should be used as the measure of damage ignores Warner's evidence that the dam and lake have increased the likelihood of further flooding and that settlement of sediment will turn the waterway into a swamp or marsh in ten to fifteen years. Plaintiffs' real estate appraiser, R. D. Choplin, gave his opinion that the

values of the properties on the market had been permanently reduced because land which has been flooded takes on a stigma. The proper measure of damage to an upstream property owner caused by obstruction of a natural watercourse where recurring damage is forecast is the difference in value of the property prior to and after imposition of the hazard. *Kelso v. C. B. K. Agronomics, Inc., supra.* When the damage to real estate is permanent and the injury is major, the proper measure of damages is the difference between the market value immediately before and after the injury occurred. *Belveal v. H. B. C. Development Company,* 279 S.W.2d 545 (Mo.App.1955). The evidence here supported the damage instruction as given.

In the next sub-point, defendant pursues its own theory, earlier described, that the flood resulted in whole or in part because the upper level crossing and the "S" curve impeded the water flow. Here, defendant argues that plaintiffs' damage instruction should have provided for an apportionment assessing against defendant only the share of damage which the jury found was directly related to design and construction of the dam. As to Group I plaintiffs, the subject of this point, their real estate was below the upper level crossing and it is therefore doubtful, even under defendant's evidence, if any attribution of cause other than the dam could be made. The content of the instruction depended on plaintiffs' evidence which, when evaluating the instruction, is given all favorable intendments and inferences. *Stanfill v. City of Richmond Heights,* 605 S.W.2d 501, 502 (Mo.App.1979). A party is entitled to an instruction conforming to his pleaded theory of recovery if supported by the evidence. *S. P. Personnel Associates of San Antonio, Inc. v. Hospital Building & Equipment Co., Inc.,* 525 S.W.2d 345, 350 (Mo.App.1975).

■ The evidence on which defendant relies to support the apportionment theory was adduced by defendant on cross-examination of Warner. Defendant sought to discredit Warner's conclusion that the flood would not have occurred if the dam had not been built and introduced prior statements by Warner indicating that the upper crossing and the "S" curve caused the flooding. Such evidence offered on the issue of credibility is not substantive evidence of the facts described. *Zimmerman v. Young,* 280 S.W.2d 457, 460 (Mo.App.1955). No substantive evidence here warranted or required any instruction advising the jury of any possible basis to adjust a damage award against defendant on apportioned causation.

Finally, defendant contends plaintiffs' Instruction No. 3, the verdict director, was erroneous because unsupported by any evidence of defendant's negligence. The point has been collaterally considered earlier on defendant's general argument that it was entitled to a judgment n. o. v. as to all plaintiffs. The same result obtains as to this sub-point because, on the authority previously cited, the same favorable inferences from the evidence are accorded plaintiff when considering if an instruction is supported by the evidence. In addition, the contention by defendant that no proof of negligence was offered misevaluates the basis for Warner's expert opinion as to causation. If, as Warner asserted, the pooling effect of the standing body of water in the lake backed up resistance to normal runoff of Walnut Creek to the point where the culverts in the upper level crossing were filled, the negligence lay in failing to take account of these consequences and build the dam accordingly or not construct it at all.

All of the points of error advanced by defendant are found to be without merit.

## APPEAL OF GROUP II PLAINTIFFS

Although the trial court denied defendant's motion for judgment as to Group II plaintiffs, those with property upstream from the upper level crossing, it did award defendant a new trial as to these plaintiffs. On appeal, the Group II plaintiffs contend the new trial order must be reversed be-

cause it fails to set out the ground on which the new trial was ordered.

The difficulty with the court's order lies in the following language:

"The defendant's motion to set aside the verdict and grant a new trial for the reason that the verdict is against the weight of the evidence is sustained as to the verdict of the jury and the judgment entered thereon on March 24, 1980 in favor of plaintiff Paul Amish in the amount of $6,770.05. The verdict and judgment in favor of plaintiffs Ruth L. and Warren W. Kester in the sum of $13,512.60 is set aside and new trial granted. * * * " (Then followed in like language orders as to the balance of the Group II plaintiffs.)

Group II plaintiffs other than Paul Amish argue that the order gives no reason as to them and thus violates Rule 78.03.

While the order was somewhat carelessly composed and improvidently worded, a fair reading of the entire order with knowledge of the controversy leads inevitably to the conclusion that the trial court intended to treat all class members alike and merely omitted repetition of the full language for each plaintiff in Group II. Indeed, there was no basis in the evidence or in defendant's motion to differentiate between Paul Amish and the other property owners above the upper reservoir crossing. The trial court apparently concluded that the evidence as to flooding above the crossing weighed more heavily in favor of defendant and their position that these plaintiffs suffered flooding because of factors other than the dam.

■ Even if the order is deemed not to state grounds for awarding a new trial as to Group II plaintiffs other than Paul Amish, the order is not thereby necessarily erroneous. The presumption of erroneous action may be rebutted where the ground upon which the motion is granted clearly appears from the record. *Hightower v. Hightower,* 590 S.W.2d 99, 103 (Mo.App.

1979). Reference has heretofore not been made to the evidence given by defendant's expert, Bishop. He testified, with some reservations, that the dam was probably responsible for the flooding suffered by Group I plaintiffs. As to Group II plaintiffs, however, he was firm in his opinion that the openings in the upper reservoir crossing were of insufficient size to carry the water coming down Walnut Creek after the heavy rainstorms in 1974 and 1975. The culverts did become clogged with debris and the water did unquestionably back up behind the crossing and in the "S" curve. These facts were acknowledged by Warner although he attributed a significance to the standing body of lake water which Bishop stated had no effect upstream from the crossing.

The single critical issue in the case was causation as identified by the two expert witnesses. The trial court disagreed with the jury on the weight of this evidence and awarded a new trial because it believed the scales balanced in defendant's favor as to Group II plaintiffs. The ground for the award of the new trial is discernible from the record. Any presumption of error from the content of the order is rebutted by the record.

## APPEAL OF PLAINTIFF PAUL AMISH

As one of the Group II plaintiffs, Paul Amish appeals the order of the trial court granting defendant a new trial and contends that order should be overturned because no substantial evidence supported a verdict for defendant. This aspect of the contest is carried forward by Amish alone because the theory of the other Group II plaintiffs, considered in the previous section of this opinion, was that the order failed as to all plaintiffs except Amish for want of a statement of grounds.

The evidence on this subject has already been reviewed extensively in this opinion. It is sufficient at this point to note that both expert witnesses, Warner and Bishop, as well as other witnesses, testified that at

the time of the floods the upper reservoir crossing became clogged causing an accumulation of water which overran the banks of the creek and flooded the properties of Group II plaintiffs, including the property belonging to Amish. As to plaintiffs above the crossing, issue was drawn between Warner's opinion that the dam was responsible for the flooding and Bishop's opinion that it was not. In weighing the evidence on the subject, the physical features of the area displayed in photographs, maps and other demonstrative evidence must play a role. From the result, it is evident the trial court differed from the jury and found defendant's evidence more persuasive.

▮ The standard of appellate review as to the award of a new trial is markedly different from that applicable to defendant's motion for judgment n. o. v. considered earlier in this opinion, despite the common identity of the evidence relevant to each. The granting of a new trial is in the exercise of judicial discretion by the trial judge and his order will be upheld absent abuse of that discretion. *Shaffer v. Sunray Mid-Continent Oil Co.*, 336 S.W.2d 102 (Mo. 1960). An appellate court will be more liberal in upholding the action of the trial court in sustaining a motion for new trial than when the trial court has denied relief. *Jenkins v. Keller*, 579 S.W.2d 166 (Mo.App. 1979). Weighing of the evidence is not a function of the appellate court in review of a jury tried case. The appellate court will not interfere with the award of a new trial on the ground that the jury verdict was against the weight of the evidence where the ruling is supported by substantial evidence. *Foster v. Rosetta*, 443 S.W.2d 183 (Mo.1969).

▮ The evidence of witness Bishop in conjunction with the physical facts associated with the flooding was substantial and entitled the trial court to decide that the weight of the evidence favored defendant as to claims of Group II plaintiffs. The award of a new trial as to Paul Amish, and the other Group II plaintiffs as well, was not an abuse of discretion.

## APPEAL OF GROUP I AND GROUP II PLAINTIFFS AS TO PUNITIVE DAMAGES

Plaintiffs' petition included a claim for allowance of punitive damages, but at the close of plaintiffs' evidence the trial court sustained defendant's motion for a directed verdict on that issue. All plaintiffs now contend that ruling was erroneous because substantial evidence showed defendant's conduct was indifferent to and in conscious disregard of the safety of others.

The evidence relied on by plaintiffs to support the claim for punitive damages was given in part by plaintiff Lukomske, one of the Group I plaintiffs. Lukomske was himself a builder and had purchased the ground below the upper level crossing and had constructed his own house and the residences sold to the other Group I plaintiffs.

According to Lukomske, plans for the dam, the lake and the Walnut Creek development were generally known and a source of concern in the neighborhood. Lukomske's house was the closest to the lake among the properties owned by the various plaintiffs. In late 1971 during the progress of site preparation, defendant built a temporary dam across Walnut Creek to facilitate passage of equipment. At that time, Lukomske complained to Robert Buford, Sr., one of the principals in defendant corporation, that the dam would cause flooding problems upstream. Buford assured him there was no danger. Soon thereafter, a heavy rain came and Lukomske's yard and basement were flooded. On that occasion, workmen for defendant came in the night-time hours and cut a breach in the dam to release the impounded waters.

Lukomske persisted in his complaints to Buford and to Marvin Enochs, another principal in Walnut Creek Development, Inc., and threatened legal action if defendant continued with its work to construct a per-

manent dam. As the work continued, Lukomske again and again told Buford that the dam would cause serious consequences by raising the water level in the creek bed and that upstream owners would be flooded. Despite these protests, defendant continued with construction and completed the dam. As demonstrative of defendant's response to the potential damage to other property owners, Lukomske described two confrontations, one in which the wealth of Enochs was recited as sufficient to overcome any minimal values in property owned by others nearby and another in which Lukomske said Buford told him to keep his mouth shut about the dam or "some big people" would take care of him.

Before the close of plaintiffs' case, a statement of the net worth of defendant was offered to be read to the jury and defendant objected. The objection was sustained. Thereafter, and before defendant commenced presentation of evidence, the court sustained defendant's motion for a directed verdict as to the punitive damage claim.

Plaintiffs contend the court erred in denying them a submission on punitive damages because the evidence demonstrated complete indifference to or conscious disregard for the safety of others. Defendants counter by asserting that allowance of punitive damages is within the discretion of the trial court.

On the authorities earlier cited in this opinion, the court reviews plaintiff's evidence in the light most favorable to the claim asserted and accords all favorable inferences when considering the issue of a directed verdict for defendant. The evidence recounted above has been stated in that vein. Of course, no evidence by defendant appears for consideration because the ruling was based only on the evidence of plaintiffs. The question is whether that evidence entitled plaintiffs to go to the jury on the claim for punitive damages. Succinctly stated, plaintiffs' evidence showed defendant was repeatedly warned that construction of the dam would cause flooding and damage to upstream property owners, a prediction partially confirmed when Lukomske's property was flooded in the early stages of construction. Defendant thereafter paid no heed to the protests, pursued the project to completion and threatened reprisals if complaints persisted. The flooding which produced this suit followed close upon completion of the dam in 1974 and was repeated the following year.

A case frequently cited as announcing the test for imposition of punitive damages is *Beggs v. Universal C. I. T. Credit Corp.*, 409 S.W.2d 719 (Mo.1966). The court there stated, " 'There must be, in order to justify punitive damages, some element of wantonness or bad motive, but if one intentionally does a wrongful act and knows at the time that it is wrongful he does it wantonly and with a bad motive.' [Citations omitted.] Furthermore, an evil intent may be implied from reckless disregard of another's rights and interests." *Beggs, supra* at 722–723.

*Hawkins v. Burlington Northern, Inc.*, 514 S.W.2d 593 (Mo. banc 1974) was a case in which defendant railroad erected an embankment, culverts and drainage ditches during the construction of new trackage. Plaintiffs brought action for flood damage to their crop lands and sought punitive damages contending they had lodged numerous complaints with defendant about the condition which produced the flooding but defendant failed to remedy the condition. Citing *Beggs*, the court held a submissible case for punitive damages was made, it being an issue for the jury to decide whether the construction was undertaken by the railroad with the requisite engineering skill.

■ It has been previously observed in this opinion that negligent design, construction or maintenance of defendant's dam were not elements of proof requisite to submission of plaintiffs' claim for compensatory damages, despite the content of the petition and the verdict directing instruc-

tions. On the authorities cited, a trespass by causing overflow from a natural watercourse involves a species of strict liability. It does not therefore follow, however, that submission of the cause on the theory of strict liability and not on negligence deprives the complainant of a claim to punitive damages. *Rinker v. Ford Motor Co.*, 567 S.W.2d 655 (Mo.App.1978) was a products liability case in which Ford was charged with advance knowledge a design defect presented a potential hazard but nothing was done to warn the public or remedy the problem. The court held there was no reason to exclude products liability cases from the cases in which punitive damages may be recovered. The jury was entitled to weigh the inactivity of Ford against the hazard presented and allow punitive damages if Ford had consciously or knowingly elected to disregard what it well knew to be a genuine potential for danger.

In the subject case, plaintiffs were likewise entitled to have the jury pass upon the question of whether defendant's prosecution of its construction project to completion in the face of repeated warnings as to the danger of upstream flooding and the flooding incident during construction amounted to complete indifference to or conscious disregard for the interests of plaintiffs. Defendant, of course, would be expected to submit countervailing evidence including proof, if such there be, that design and construction was reasonably calculated to meet the complaints and guard against the hazard. Worthy of note is the approval in *Rinker* of MAI 10.02 as the appropriate instruction for punitive damages in cases of this type.

For error of the trial court in sustaining defendant's motion for directed verdict as to punitive damages, the case must be remanded for retrial of that issue alone as to Group I plaintiffs. On retrial as to Group II plaintiffs, in accordance with the order of the trial court sustaining defendant's motion for new trial, submission of punitive damages will be governed by the evidence adduced and the views expressed in this opinion.

The judgments awarding compensatory damages to plaintiffs Donnell, Hays and Lukomske are affirmed. The order granting defendant a new trial as to plaintiffs Amish, Kester, Lawrence, Schiable and Van Dee is affirmed. The judgment in favor of defendant and against all plaintiffs as to punitive damages is reversed and the cause is remanded for further proceedings.

All concur.